B<small>AKER</small> and B<small>ECKER</small>, JJ., concur.

[No. 42295-2-I.   Division One.   April 19, 1999.]

S<small>HEPARD</small> A<small>MBULANCE</small>, I<small>NC</small>., <small>ET AL</small>., *Appellants*, v. H<small>ELSELL</small>, F<small>ETTERMAN</small>, M<small>ARTIN</small>, T<small>ODD</small> & H<small>OKANSON</small>, <small>ET AL</small>., *Respondents*.

*Roger Anderson*, for appellants.

*McNaul Ebel Nawrot Helgren & Vance, P.L.L.C.* by *John S. Ebel*; and *William J. Crittenden*, for respondents.

BAKER, J. — The law firm of Helsell, Fetterman, Martin, Todd & Hokanson was contacted by its client, Shepard Ambulance, Inc., 10 months after Dywain Berkins obtained a $204,016.75 default judgment in his personal injury lawsuit against Shepard. Shepard sought to vacate the default judgment in order to defend against Berkins' claims. Acting on information that the claim had been settled before suit was filed, Helsell first tried to obtain a voluntary set-aside of the judgment. Its efforts were unsuccessful because no written release could be located. Helsell did not move to vacate the default judgment until six additional months had passed, which was four months beyond the time limit for motions to vacate a default judgment under CR 60(b)(1). After Shepard's motion to vacate the default judgment was denied, Shepard filed this malpractice case against Helsell.

The parties agreed that there are no issues of fact that were not before the court at the time the default judgment

was filed, and Shepard moved for partial summary judgment. Shepard requested that the trial court determine as a matter of law whether the motion to vacate would have been granted if filed within a year of entry of the default. Helsell's cross motion for summary judgment requested the trial court find as a matter of law that the motion to vacate would not have been granted even if it had been filed within the one year limit. Helsell's motion was granted and the claim was dismissed.

Applying a de novo standard of review, we conclude that Shepard failed to meet its burden of showing that the motion to vacate the default judgment would have been granted as to liability. We thus hold that Helsell's cross motion as to liability was properly granted. We also hold that Berkins' damages award was not supported by substantial evidence, and thus Shepard has set forth a defense as to damages which would have entitled it to vacation of the damages portion of the default judgment. We therefore reverse the trial court's summary judgment dismissal of this case.

## I

In 1990 Dywain Berkins, a quadriplegic, was transported to a hospital by Shepard. Berkins alleged that he sustained personal injuries as a result of a fall as he was removed from Shepard's ambulance. Shepard's insurance carrier, Azstar, attempted to negotiate a settlement with Berkins and sent two checks which Azstar claimed were full and final settlement of the personal injury allegations. Berkins cashed both checks but did not provide Azstar with a release. Berkins later claimed that he never intended these payments to serve as a complete release of his claim.

In June 1993 Berkins served Shepard with a Summons and Complaint alleging personal injuries caused by Shepard's negligence. Shepard did not respond to the suit and Berkins obtained a $204,016.75 default judgment in July 1993. Shepard later claimed that the complaint went

unanswered because Shepard's Loss Control Manager, who received the complaint, misplaced it as a result of vision problems caused by diabetic complications and that she later suffered a heart attack while on medical leave. Shepard's new Loss Control Manager found the unanswered complaint and contacted Helsell partner David Gross in May 1994, 10 months after entry of the default judgment.

Gross contacted Berkins' counsel and asserted that the case had been settled. Berkins' counsel requested a copy of his client's release, which Gross searched for over a six-month period but was unable to produce. When it became apparent that there was no written release, Gross moved to vacate the default judgment in November 1994, 16 months after its entry. Shepard's motion to vacate was denied.

Shepard filed the instant case for legal malpractice against Gross and his law firm, alleging legal malpractice for failure to timely file the motion to vacate. Shepard moved for partial summary judgment, requesting that the trial court determine as a matter of law whether the motion to vacate would have been granted if timely filed. Helsell's cross motion for summary judgment requested the trial court find as a matter of law that the motion to vacate would not have been granted even if it had been filed within the one-year limit for relief under CR 60(b)(1). Helsell's motion was granted and this case was dismissed.

## II

■■ A finding of liability in a legal malpractice case necessarily involves two steps. The first question addressed is whether the client's initial cause of action was lost or compromised by the attorney's alleged negligence.[1] Resolution of this issue ordinarily requires the trier of fact in a malpractice case to decide what a reasonable jury or fact finder in the initial cause of action would have done "but

---

[1]*Daugert v. Pappas*, 104 Wn.2d 254, 257, 704 P.2d 600 (1985).

for" the attorney's alleged negligence.[2] The second question, which is also for the finder of fact, is whether the client would have fared better "but for" the attorney's mishandling of the initial cause of action.[3] If Shepard's motion to vacate would have been denied even if it had been timely filed, it logically follows that Shepard's malpractice claim against Helsell will fail.

Helsell notes that a judge's decision to grant or deny a motion to vacate is reviewed under the abuse of discretion standard[4] and thus contends that this court should apply that standard to the instant summary judgment appeal. But we are not reviewing a trial court's discretionary decision to grant or deny a motion to set aside a default judgment. We are instead reviewing an appeal from a summary judgment. Appellate courts reviewing summary judgments engage in the same inquiry as the trial court (i.e., de novo).[5] In its motion for partial summary judgment, Shepard stated:

> The Question of Whether the Court Should Have Granted a Timely Motion by Shepard to Vacate the Default and Default Judgment Is an Issue of Law That May Properly Be Decided By This Court on a Partial Summary Judgment Motion.
>
> . . .
>
> There are no issues of fact presented here that were not before the court at the time the Motion to Vacate the Default and the Default Judgment against Shepard was made.

Shepard does not contend that additional discovery or expert testimony is warranted here, or that its attorney was negligent because the motion's content was deficient, or that he had additional information but did not act upon it. Under these circumstances and due to Shepard's conces-

---

[2]*Daugert*, 104 Wn.2d at 258.

[3]*Daugert*, 104 Wn.2d at 257.

[4]*See White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968) (rulings on motions to vacate default judgments are reviewed for abuse of discretion).

[5]*Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

sion, summary judgment is appropriate. We do not hold that such determinations are always questions of law that are properly determined on summary judgment.[6] But here, we determine de novo how the hypothetical motion to vacate would have been decided.

## III

Shepard contends that if Helsell had submitted a motion to vacate within one year of entry of Berkins' default judgment it would have been granted relief under CR 60(b)(1), which provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

. . .

The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken. . . .[7]

■ Default judgments are generally disfavored in the law as "one of the most drastic actions a court may take to punish disobedience to its commands."[8] It is "the policy of the law that controversies be determined on the merits rather than by default."[9] This policy is balanced against the necessity of having a responsive and responsible system

---

[6]*See Charles Reinhart Co. v. Winiemko,* 196 Mich. App. 110, 492 N.W.2d 505 (1992) for a discussion of the advantages and disadvantages of such a holding.

[7]CR 60(b)(1).

[8]*Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 581, 599 P.2d 1289 (1979) (citing *Widucus v. Southwestern Elec. Co-op., Inc.,* 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)).

[9]*Griggs,* 92 Wn.2d at 581 (citing *Dlouhy v. Dlouhy,* 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)).

which mandates compliance with judicial summons.[10] The fundamental principle in balancing these competing policies is " 'whether or not justice is being done.' "[11]

> Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.[12]

■■ It is against this backdrop that a trial court exercises its discretion to grant or deny motions to vacate default judgments. Proceedings to vacate default judgments are equitable in character, and relief should be granted or denied in accordance with equitable principles.[13] A trial court deciding such motions should exercise its discretion liberally and equitably, so that substantial rights are preserved and justice between the parties is "fairly and judiciously done."[14]

■ Decisions to vacate default judgements require an analysis of four factors: (1) substantial evidence to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) whether the moving party's failure to timely appear in the action and answer the opponent's claim was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.[15]

These four factors are not equally weighted:

---

[10]*Id.*

[11]*Id.* at 582 (quoting *Widucus*, 167 N.E.2d at 803).

[12]*Griggs*, 92 Wn.2d at 582 (quoting *Widucus*, 167 N.E.2d at 803).

[13]*White*, 73 Wn.2d at 351 (citing *Roth v. Nash*, 19 Wn.2d 731, 144 P.2d 271 (1943)).

[14]*Id.*

[15]*Id.* at 352.

The first two [factors] are the major elements to be demonstrated by the moving party, and they, coupled with the [latter two] secondary factors, vary in dispositive significance as the circumstances of the particular case dictate. Thus, where the moving party is able to demonstrate a strong or virtually conclusive defense to the opponent's claim, scant time will be spent inquiring into the reasons which occasioned entry of the default, provided the moving party is timely with his application and the failure to properly appear in the action in the first instance was not willful. On the other hand, where the moving party is unable to show a strong or conclusive defense, but is able to properly demonstrate a defense that would, prima facie at least, carry a decisive issue to the finder of the facts in a trial on the merits, the reasons for his failure to timely appear in the action before the default will be scrutinized with greater care, as will the seasonability of his application and the element of potential hardship on the opposing party.[16]

Shepard contends that it had two defenses to liability in Berkins' lawsuit as well as a defense to the amount of Berkins' damages. To establish a prima facie defense, affidavits supporting motions to vacate default judgments must set out the facts constituting a defense and cannot merely state allegations and conclusions.[17] A court hearing a motion to vacate decides whether the affidavits presented set forth substantial evidence to support a defense to the claim.[18]

As a defense to liability, Shepard contends that Berkins inadvertently "hit" the reverse button on his wheelchair. Berkins is a quadriplegic with only a limited use of his left arm, although he does make involuntary hand and arm movements. But Shepard has not alleged that Berkins was somehow negligent because he failed to inform it of those involuntary hand or arm movements or even that he "hit"

[16]*Id.* at 352-53.

[17]CR 60(e)(1); *Commercial Courier Serv., Inc. v. Miller,* 13 Wn. App. 98, 104, 533 P.2d 852 (1975).

[18]*Suburban Janitorial Servs. v. Clarke Am.,* 72 Wn. App. 302, 305, 863 P.2d 1377 (1993), *review denied,* 124 Wn.2d 1006 (1994).

the reverse button with his left arm. Neither the record nor Shepard's own allegations support this defense.

As an alternative defense, Shepard contends that Berkins cashed the two checks from Azstar with the understanding that they constituted full and final settlement of his personal injury allegations.[19] Final settlements of insured claims are ordinarily negotiated conditioned upon execution of a written release. Shepard does not assert that Azstar's normal procedures depart from this standard practice. We are not persuaded that Shepard has made a sufficient showing to support a defense to liability.

Shepard contends that the default award was excessive, and that it could have mounted a successful defense as to the amount of Berkins' damages. Under CR 55(b)(2), judgment after default may be entered as follows:

> When Amount Uncertain. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as are deemed necessary or, when required by statute, shall have such matters resolved by a jury. Findings of fact and conclusions of law are required under this subsection.[20]

The court below held a hearing to establish Berkins' damages, and entered findings of fact and conclusions of law under CR 55(b)(2).

■ Due process obviously does not require that the defaulting defendant be given notice of a damages hearing.[21] By failing to appear and defend in a lawsuit, "a defaulting defendant bears the risk of surprise at the size

---

[19]*See* CP 75-76.

[20]CR 55(b)(2).

[21]*Conner v. Universal Utils.*, 105 Wn.2d 168, 712 P.2d 849 (1986).

of a default judgment.''[22] Nonetheless, a trial court has discretion to vacate the damages portion of a default judgment even where no meritorious defense is established.[23]

In *Calhoun v. Merritt*, no defense was presented and denial of a motion to vacate the liability portion of a default judgment was affirmed, but denial of the motion to vacate the damages portion of a default judgment was reversed as an abuse of discretion.[24] In *Calhoun*, there was no indication of hardship to the plaintiff.[25] The defendant's failure to appear was due to bona fide mistake, and he promptly moved to vacate.[26] The *Calhoun* court held that it would be inequitable and unjust to deny a motion to vacate the damages portion of the default judgment on the ground that the defendant failed to present a valid defense where the pain and suffering award warranted further discovery.[27]

*Calhoun* is the only Washington case addressing the vacation of default judgment damages. It does not set forth a standard as to when default damages should be vacated. We have reviewed the law of states with similar provisions and find that Indiana Trial Rule 60(b)(1) is essentially identical to Washington's rule. The Indiana courts have held that the standard for vacating awards of damages from default judgments is the same as the standard for setting aside awards of damages from trials.[28] In Indiana, such determinations require a showing that the evidence before the court granting the award was insufficient

---

[22]*J-U-B Eng'rs, Inc. v. Routsen*, 69 Wn. App. 148, 151, n.2, 848 P.2d 733 (1993).

[23]*Calhoun v. Merritt*, 46 Wn. App. 616, 622, 731 P.2d 1094 (1986) (defendant contended $50,000 pain and suffering default award was excessive where medical costs totaled $2,183.27).

[24]*Calhoun v. Merritt*, 46 Wn. App. 616, 622, 731 P.2d 1094 (1986).

[25]*Id.*

[26]*Id.* at 621.

[27]*Id.* at 620-21.

[28]*Doyle v. Barnett*, 658 N.E.2d 107, 110 (Ind. Ct. App. 1995).

to support the amount of damages.[29] This is analogous to Washington's standard that requires the existence of substantial evidence to support an award of damages.[30] Because the Indiana rule and precedents are similar to Washington's, we adopt Indiana's rule that the standard for vacating awards of damages from default judgments is the same as the standard for setting aside awards of damages from trials.

Thus, the default award here could be vacated if there were not substantial evidence to support the award of damages. Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise.[31] The evidence here, including Berkins' own declaration opposing Shepard's motion to vacate, does not support the finding of fact from the default hearing that Berkins suffered two or more broken ribs. Because the default award was based upon that finding, we find that Shepard would have satisfied the test for vacating a default damages award if it had moved within the one-year period applicable to motions under CR 60(b)(1).

Where a party moving to vacate a default judgment is able to demonstrate a strong or virtually conclusive defense to an opponent's claim, scant time is spent inquiring into the reasons which occasioned entry of the default provided the moving party's application is timely and the failure to properly appear in the action in the first instance was not willful.[32] Berkins' and Shepard's insurance carrier discussed the injury and were negotiating a settlement in 1990. Under these circumstances, we do not presume Shepard willfully avoided appearing in Berkins' suit. There is no evidence in the record that Shepard's failure to properly appear in the action in the first instance was willful.

In the absence of such willful behavior, where a

---

[29]*Doyle*, 658 N.E.2d at 110.

[30]*Price v. Kitsap Transit*, 125 Wn.2d 456, 465, 886 P.2d 556 (1994).

[31]*Price*, 125 Wn.2d at 466.

[32]*White*, 73 Wn.2d at 352.

party moving to vacate a default shows a strong defense and the cause of the error is understandable, a motion to vacate can be granted if it is filed within the one year period of CR 60(b)(1) even where the moving party has been less than totally diligent.[33] The cause of the error here, an employee's health problems, is understandable.

We thus examine whether Shepard would have been duly diligent in its application to vacate the default if it had moved to set it aside shortly after discovering the summons in May.[34] Due diligence after discovery of a default judgment contemplates the prompt filing of a motion to vacate.[35] Due diligence in a given case depends upon the circumstances which gave rise to the default.[36]

James Scarr became Shepard's Loss Control Manager in April 1994, and contacted Gross after he discovered the summons and complaint in May 1994. Soon thereafter, Gross learned that a default judgment had been entered. If Gross had promptly moved to vacate the default judgment, it would have been filed within the one-year period allowed for CR 60(b)(1) motions and Shepard would have acted with "due diligence" under that rule.

Finally, we examine whether substantial hardship would

---

[33]*Suburban*, 72 Wn. App. at 306 (attorney's reliance upon lack of an answer to letters he sent to opposing party, while less than total diligence, was not gross neglect).

[34]*White*, 73 Wn.2d at 352; *See also Gage v. Boeing Co.*, 55 Wn. App. 157, 164, 776 P.2d 991, *review denied*, 113 Wn.2d 1028 (1989).

[35]*See Calhoun*, 46 Wn. App. at 622.

[36]*See Hardesty v. Stenchever*, 82 Wn. App. 253, 917 P.2d 577, *review denied* 130 Wn.2d 1005 (1996) (State of Washington's reasonable belief that outside counsel was representing its interests constituted excusable neglect, trial court did not abuse its discretion in granting motion to vacate default judgement that was filed and heard within one week of notice of entry); *Canam Hambro Sys., Inc. v. Horbach*, 33 Wn. App. 452, 655 P.2d 1182 (1982) (allegation that plaintiff furnished defective steel constituted a strong defense, trial court abused its discretion in refusing to grant motion to vacate default order that was filed 23 days after notice of entry); *but cf. In re Estate of Stevens*, 94 Wn. App. 20, 971 P.2d 58 (1999) (trust beneficiary's belief that possible cotrustee represented her interests was unreasonable, trial court did not abuse its discretion in refusing to grant motion to vacate default order that was filed three months after notice of entry).

result to the opposing party if the motion is granted.[37] Berkins contended that he would have suffered substantial hardship if the motion to vacate had been granted. He stated that he relied upon the default award when he agreed to binding arbitration in a suit against another ambulance company that allegedly injured his foot. Berkins argued that Shepard would have a tactical advantage at a trial on the merits, namely, blaming all his injuries on the other ambulance company. But Birkens' complaint alleged that Shepard's negligence caused head, rib and lung injuries and that the other ambulance company caused his foot injury. The emergency room report completed after the Shepard incident does not mention trauma to Berkins' foot. The findings of fact and conclusions of law from the default hearing does not mention trauma to Berkins' foot. Berkins' "tactical advantage" argument is unsupported.

Berkins also argued he would have suffered substantial hardship as a result of vacating the default judgment because he might die before a trial on the merits. But in opposing Shepard's motion to vacate, Berkins provided no evidence of any kind to support this contention. The default award implicitly contradicts his argument because Berkins received compensation based, in part, upon a finding that he was expected to live another 33 years.

Had the motion to vacate been filed earlier, Shepard's neglect would not have been inexcusable, it would have acted with due diligence, and Berkins would not have suffered a substantial hardship by a trial on the merits as to damages. We note "the policy of the law that controversies be determined on the merits rather than by default," and find that a trial on the merits as to damages would have been appropriate if Shepard had submitted its motion to vacate within the one-year limit of CR 60(b)(1).[38] Under the special circumstances of this case, we thus hold that an

---

[37]*White*, 73 Wn.2d at 352.

[38]*Griggs*, 92 Wn.2d at 581 (citing *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)).

earlier filed motion to vacate would have been granted as to damages, and reverse.

Reversed and remanded.

KENNEDY, C.J., and COLEMAN, J., concur.

Review denied at 140 Wn.2d 1007 (2000).