[No. 45107-3-I.   Division One.   December 26, 2000.]

ANNA HWANG, *Appellant*, v. MAUREEN McMAHILL, *Respondent*.

946

*Charles K. Wiggins* and *Kenneth W. Masters* (of *Wiggins Law Offices, P.L.L.C.*), for appellant.
*Dan R. Young* (of *Bjorklund & Young*), for respondent.

Cox, J. — The dispositive issue in this unlawful detainer action is whether the trial court abused its discretion by vacating the default judgment against Maureen McMahill in favor of Anna Hwang. Because there was no mistake, surprise, or excusable neglect pursuant to CR 60(b)(1), and no material defense to the unlawful detainer complaint, we reverse the order on revision and vacate the judgment on the jury verdict.

The material facts are undisputed. In November 1994, McMahill's mother entered into a rental agreement with Hwang, the owner of Duvall Highlands Mobile Home Park. Pursuant to the terms of that rental agreement, McMahill's mother was to pay $335 per month in rent, and Hwang was to pay for all water, sewer and garbage utilities. McMahill moved into her mother's mobile home, but never signed or otherwise became a party to her mother's rental agreement. McMahill occupied the property with her mother until the latter's death in early April 1998.

On April 29, 1998, McMahill met with Hwang who informed her that she would have to enter into her own rental agreement. The parties agree that Hwang produced a written agreement for McMahill's signature, but dispute what happened next. McMahill testified at trial that she asked Hwang whether the new agreement was the same as her mother's, and that Hwang responded that it was. McMahill explained that she trusted Hwang's representation, and therefore signed the rental agreement without reading it. In fact, unlike McMahill's mother's agreement, McMahill's rental agreement provided that the "[t]enant shall, in addition to the monthly rental, *pay for all utilities supplied to the Lot.*"[1]

---

[1] (Emphasis added.)

Hwang, on the other hand, testified at trial that she reviewed the rental agreement with McMahill during their meeting, and made it clear to McMahill that she would be responsible for paying her own utilities. Hwang also testified that McMahill read the agreement thoroughly before signing it. Hwang denied telling McMahill that her rental agreement was the same as the one signed by McMahill's mother.

McMahill failed to pay rent for April 1999 when due. On April 6, 1999, Hwang served McMahill with a statutory notice to pay rent or vacate. The notice demanded that McMahill either pay that month's rent as well as outstanding utility charges or vacate the premises. McMahill did not pay her rent within five days of receiving the statutory notice. Moreover, she did not pay the amount demanded for utilities.

In May 1999, Hwang commenced this unlawful detainer action against McMahill, seeking damages, restitution of the rental premises, forfeiture of the tenancy, and attorney fees and costs. McMahill failed to respond to the eviction summons or appear, and a court commissioner entered an order of default and default judgment against her on May 19, 1999. Twelve days later, McMahill, acting pro se, moved to vacate the commissioner's judgment and to stay enforcement of the writ of restitution directed by the judgment. Following a show cause hearing, the commissioner granted McMahill's motion to vacate the default judgment. Hwang moved for revision of the commissioner's decision, which motion the trial court denied.

In its order denying Hwang's motion for revision, the trial court entered a judgment in Hwang's favor for unpaid rent pursuant to RCW 59.18.380, and referred the case for trial on the "material" issue of the right to possession of the premises. Following trial, the jury rendered a verdict in McMahill's favor on the sole issue presented to it: whether

the rental agreement between Hwang and McMahill, if any, obligated McMahill to pay certain utility charges. The trial court entered its Judgment and Findings of Fact and Conclusions of Law on that verdict.

Hwang appeals.

## Unlawful Detainer

Hwang first argues that the trial court abused its discretion by setting aside the default judgment entered after McMahill failed to appear or defend. Hwang also contends the trial court should have enforced the writ of restitution, and not referred the case to trial on the issue of possession after entering a money judgment for rent. We reverse the trial court's order on both bases.

We will review a trial court order not designated in the notice of appeal if that order prejudicially affects the decision designated in the notice and is entered before the appellate court accepts review.[2] Here, Hwang did not designate the trial court's order denying her motion for revision in her notice of appeal. But she did argue why the order was incorrect in her brief on appeal. Accordingly, we review that order pursuant to RAP 2.4(b) because it prejudicially affects the later judgment that she did designate in her notice of appeal.

■■ Resolution of a motion to vacate a default judgment is addressed to the sound discretion of the trial court.[3] We will not disturb the trial court's disposition unless it clearly appears that the court abused its discretion or its exercise of discretion was manifestly unreasonable

---

[2] RAP 2.4(b) specifically provides:

The appellate court will review a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review.

[3] *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979).

or based on untenable grounds or reasons.[4]

■ It is well established that default judgments are disfavored because the law favors a determination of controversies on their merits.[5] An appellate court is less likely to find an abuse of discretion where the trial court has set aside a default judgment, than where it has refused to do so.[6] At the same time, however, courts have recognized "the necessity of having a responsive and responsible system which mandates compliance with judicial summons."[7] The court's principal inquiry "in balancing these competing policies is whether or not justice is being done."[8]

■ In ruling upon a motion to vacate a default judgment, the trial court should primarily consider whether the moving party has a defense on the merits, and whether the "moving party's failure to timely appear in the action . . . was occasioned by mistake, inadvertence, surprise or excusable neglect."[9] If a strong defense on the merits exists, the court will spend scant time inquiring into the reasons which resulted in the entry of the order of default.[10] Likewise, "if the party can show only a minimal prima facie defense, the court will scrutinize the other considerations more carefully."[11] The two secondary factors for the court's consideration are whether the "moving party acted with due diligence after notice of entry of the default judgment," and whether vacating the default judgment will

[4] *Griggs*, 92 Wn.2d at 582; *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991); *Prest v. Am. Bankers Life Assurance Co.*, 79 Wn. App. 93, 97, 900 P.2d 595 (1995), *review denied*, 129 Wn.2d 1007 (1996).

[5] *Griggs*, 92 Wn.2d at 581.

[6] *Griggs*, 92 Wn.2d at 582.

[7] *Griggs*, 92 Wn.2d at 581.

[8] *Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson*, 95 Wn. App. 231, 238, 974 P.2d 1275 (1999) (citing *Griggs*, 92 Wn.2d at 582), *review denied*, 140 Wn.2d 1007 (2000)).

[9] *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).

[10] *White*, 73 Wn.2d at 352.

[11] *Calhoun v. Merritt*, 46 Wn. App. 616, 619, 731 P.2d 1094 (1986).

result in substantial hardship to the opposing party.[12]

■ It is undisputed that Hwang served McMahill with both the statutory notice to pay rent or vacate and with the statutory summons and a complaint for unlawful detainer. Pursuant to RCW 59.18.365, the first paragraph of the summons clearly stated as follows:

THIS IS NOTICE OF A LAWSUIT TO EVICT YOU.

PLEASE READ IT CAREFULLY.

THE DEADLINE FOR YOUR WRITTEN RESPONSE IS:

5:00 P.M., on May 14, 1999

McMahill failed to appear or otherwise respond by the above deadline. Hwang took a default judgment. The judgment was for overdue rent and other charges, and directed the issuance of a writ of restitution.

Twelve days later, McMahill filed a pro se motion to vacate the default judgment entered against her. In support of her motion, McMahill stated that:

I ~~could no~~ did not understand what was happening and could not understand the words that were used. As a result of my impatience, I read no further.

This is a *water utility* "non payment." My landlord refused 1/2 of Aprils Rent and Told me not to pay Mays rent unless I had the $540.00 for the water sewer & garbage as well.

There is nothing else in the record supporting her motion. The commissioner ordered a show cause hearing, and stayed enforcement of the writ of restitution. At the hearing, the commissioner entered an order vacating the default judgment.

Hwang moved to revise the commissioner's order, asking that the judge reinstate the default judgment previously entered against McMahill. Following a show cause hearing, the judge denied Hwang's motion for revision, finding that there was "mistake, surprise or excusable neglect on the part of [McMahill] in not answering in a timely manner," as

---

[12] *White*, 73 Wn.2d at 352.

permitted by CR 60(b)(1). Nevertheless, the court also entered a money judgment for rent in favor of Hwang against McMahill, and ordered the case to proceed to trial on the "material" issue of the right to possession. Presumably, this was based on the dispute regarding the duty to pay utilities.

Here, the sole basis for that order on revision, according to the record before us, is McMahill's written explanation that "I did not understand what was happening and could not understand the words that were used. As a result of my impatience I read no further."

On appeal, McMahill asserts that she was upset at the time she read the summons, stating that "[s]he simply did not read the papers carefully enough to ascertain that she had to respond by a certain date, and did not know how to respond." But McMahill has a high school education, and does not claim she cannot read. While McMahill may have been too upset or impatient to read the eviction papers when served, that does not address why she could not have taken steps to read the papers and respond in the 12 days between the time of service of the summons and complaint and the entry of the default judgment. In short, there was no tenable basis for the court's finding of mistake, surprise, or excusable neglect under CR 60(b)(1).

There is a second reason why setting aside the default was erroneous. If the trial court had found that McMahill had demonstrated a strong defense on the merits, it need not have conducted a detailed inquiry into the question of mistake, surprise or excusable neglect.[13] There was no such defense here.

In its order denying Hwang's motion for revision, the court entered a judgment in Hwang's favor on the issue of unpaid rent. Nevertheless, the court determined there were "material" issues of disputed fact that warranted trial on the issue of possession. Our reading of the record leads us to conclude that there were no material issues to be determined at trial.

---

[13] *White*, 73 Wn.2d at 352.

It is undisputed that McMahill failed to make the $385 April rent payment when due. McMahill's rental agreement required her to pay rent "on or before the first day of each month." She did not. On April 6, 1999, Hwang served McMahill with a statutory five-day notice to pay rent or vacate. The notice demanded that McMahill pay $385 in overdue rent for the month of April, as well as $540 in allegedly owing utility charges. The notice required McMahill to either pay the sums due by April 11, 1999 or vacate the premises. It is undisputed that McMahill failed to tender any portion of her April rent or the disputed utilities payment within five days of receiving the April 6, 1999 notice to pay rent or vacate.

The record before us on appeal indicates that McMahill's church agreed to pay a portion of McMahill's April rent. It appears that the church provided Hwang with a $200 check for that purpose sometime after April 11, 1999. This payment was after the expiration of the statutory five-day notice. It further appears that Hwang accepted the check and applied that money toward the unpaid utility charges allegedly owed by McMahill.

At oral argument, McMahill argued that Hwang's acceptance of these funds waived the prior default. We disagree.

■ It is true that a landlord who accepts rent with knowledge of prior breaches of the terms of the lease, "waives his right to rely on such prior breaches as a basis for setting in motion his statutory remedy of unlawful detainer."[14] However, a landlord does not waive his or her right to proceed with an unlawful detainer action by accepting only partial rent.[15] Here, McMahill's church provided only $200 in partial payment of the $385 due for April's rent, and it did so only after expiration of the five-day period set forth in the April 6, 1999 notice to pay rent or

---

[14] *Wilson v. Daniels*, 31 Wn.2d 633, 644, 198 P.2d 496 (1948).

[15] *Hous. Res. Group v. Price*, 92 Wn. App. 394, 402, 958 P.2d 327 (1998), *review denied*, 137 Wn.2d 1010 (1999).

vacate. Hwang applied the funds to utilities. Whether one views the funds as partial payment of rent or utilities, the amount was only a partial payment for either. There was no waiver of the right to proceed with unlawful detainer. The revision court's judgment in favor of Hwang for the rent confirms that view.

Under RCW 59.20.080(1)(b), a landlord may terminate a tenancy following nonpayment of rent or other charges specified in the rental agreement, upon five days written notice to pay rent and/or vacate. Because McMahill did not tender the $385 in rent due for the month of April 1999 within five days of receiving the notice to pay rent or vacate dated April 6, 1999, Hwang was entitled to possession of the premises pursuant to RCW 59.20.080(1)(b).

■ McMahill was thus in unlawful detainer for failing to pay rent pursuant to RCW 59.18.380. Because McMahill was in unlawful detainer, the defense regarding her liability for unpaid utilities is moot. That question simply is not a material defense to the unlawful detainer action. Accordingly, we hold the trial court erred in referring this case to trial "on the issue of possession," when the court had resolved that issue upon entering a judgment pursuant to RCW 59.18.380 on the question of unpaid rent.

## Attorney Fees

■ Both parties seek attorney fees on appeal pursuant to RAP 18.1. A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party.[16] Hwang is the prevailing party on appeal, and is entitled to attorney fees pursuant to the terms of the contract as well as RCW 59.20.110, subject to her compliance with RAP 18.1.

We reverse the order on revision to the extent that it denies the request to reinstate the default judgment. We

---

[16] *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994).

also vacate the judgment on the jury verdict.

AGID, C.J., and GROSSE, J., concur.

Review denied at 144 Wn.2d 1011 (2001).