134 P.3d 1172 (2006)
133 Wash.App. 77
Khamchanh SORATSAVONG, Appellant,
v.
Stephen HASKELL and Jane Doe Haskell, his wife; Christopher M. Grimes and Jane Doe Grimes, his wife; and the law firm of Eugster Haskell, Respondents,
Stephen K. Eugster and Jane Doe Eugster, his wife, Defendants,
v.
Allstate Insurance Company, a foreign corporation, Third-Party Defendant.
No. 57196-6-I.
Court of Appeals of Washington, Division 1.
April 17, 2006.
Publication Ordered May 9, 2006.
Michael Eugene Blue, Attorney at Law, Seattle, WA, for Appellant.
Peter Joseph Johnson, Johnson Law Group, Spokane, WA, for Allstate Insurance Company.
Amy Christina Clemmons, Washington State Attorney General, Hugh T. Lackie, Evans Craven & Lackie PS, Spokane, WA, for Respondents.
PER CURIAM.
¶ 1 In order to prevail in a legal malpractice case, the plaintiff must prove he was damaged by his attorney's errors. Khamchanh Soratsavong appeals the trial court's order dismissing his legal malpractice case and granting summary judgment to his attorney Stephen Haskell. He contends the trial court erred because vacating the default order and default judgment entered against him did not require him to establish he had a meritorious defense. The trial court did not err by dismissing his case. While ordinarily a meritorious defense to liability is not required *1173 to vacate a default damages award, here the default judgment decided the issue of liability and left the damages amount blank. The damage amount was entered nunc pro tunc after Haskell had withdrawn as counsel, and Soratsavong stipulated to the damage amounts entered as judgments against him. Thus, while Haskell failed to file any proper motions on Soratsavong's behalf, the trial court did not err by dismissing Soratsavong's legal malpractice case because he could not show he was damaged by what Haskell failed to do. We affirm.

FACTS
¶ 2 The parties agree to the following facts. On August 19, 1995, Khamchanh Soratsavong fell asleep while driving and lost control of his car. When the car rolled over, Soratsavong's wife,[1] 39-year-old Sivilay Nammathao, was thrown from the car and sustained severe brain injury. She remains in a permanent coma. Sivilay's 10-year-old daughter, Napha Nammathao, suffered a concussion, internal injuries, and a fracture of the leg and pelvis.
¶ 3 Guardians ad litem (GALs) were appointed for Sivilay and Napha in order to pursue personal injury claims against Soratsavong. Khene Kommavongsa became the GAL for Sivilay, and Phoukeo Nammathao became the GAL for Napha.[2]
¶ 4 On May 17, 1996, the GALs filed two separate lawsuits in Benton County Superior Court against Soratsavong for negligence.[3] On July 5, 1996, the trial court entered orders of default against Soratsavong when he failed to appear and defend.
¶ 5 At the time of the accident, Soratsavong had a $50,000 Allstate policy. When Allstate learned about the orders of default on July 15, 1996, it retained the Eugster Haskell law firm to appear for Soratsavong and move to set aside the orders of default.[4]
¶ 6 On August 30, 1996, the GALs submitted affidavits setting forth the extent of Sivilay and Napha's injuries. On September 11, 1996, the court entered default judgments of liability in each of the lawsuits, leaving the damage amounts blank. On October 11, 1996, Christopher Grimes, an associate at Eugster Haskell, filed a CR 55(c) motion to vacate the order of default in Sivilay's suit. No motion to vacate was filed in Napha's suit. A. Graham Greenlee, attorney for Sivilay, objected to Grimes' use of CR 55(c) to support his motion to vacate, informing him in writing that CR 60(b)(1) was the proper rule and that Grimes was required to obtain a show cause order under CR 60(e)(3).[5] The letter also informed Grimes that Greenlee would move to dismiss for lack of jurisdiction and seek attorney fees and expenses if Grimes proceeded with the motion based on lack of service. Haskell's law firm took no further action in either lawsuit.[6] The motion Grimes did file was denied because a default judgment of liability had been entered and no meritorious defense was proposed.[7] Allstate eventually tendered $50,000 into the registry of the court.[8]
¶ 7 On February 21, 1998, Eugster Haskell withdrew as counsel for Soratsavong. Two days later, Allstate retained Patrick McMahon to appear on Soratsavong's behalf and move to set aside the default judgments.[9] McMahon filed motions to vacate the default judgments in both cases, but these motions were denied because they were brought more *1174 than one year after the judgments were entered.[10]
¶ 8 On September 3 and 4, 1999, Soratsavong and both GALs entered into a second agreement which provided, in part, that Soratsavong "has no other claims or substantial assets with which to satisfy the judgments in the lawsuits other than the limits of the Allstate . . . policy." Under this agreement, he agreed to assign all of his legal malpractice claims against the attorneys at Eugster Haskell and participate in the prosecution of the claims at the direction of the GALs' counsel. As consideration, the GALs agreed not to execute on the judgments obtained against Soratsavong and accept his $50,000 Allstate policy.
¶ 9 On September 9, 1999, the parties stipulated to $12,244,129.39 for Sivilay's damages and $177,136.15 for Napha's damages, and the trial court entered default judgments nunc pro tunc for these amounts.[11] On the following day, the GALs were re-appointed as GALs for Sivilay and Napha to pursue a legal malpractice claim against Haskell and his firm. The GALs later filed in Spokane Superior Court.
¶ 10 In the GALs' malpractice claim, they alleged the default judgments were the result of defendant's failure to file a timely motion to vacate the orders of default and judgment.[12] After the trial court dismissed these suits, the GALs appealed to Division Three of the Court of Appeals, and the Supreme Court granted certiorari on the issue of the assignability of legal malpractice claims to an adversary in the same litigation that gave rise to the alleged legal malpractice.[13] The Supreme Court held that such assignments of malpractice were not permitted and remanded the case to allow Soratsavong to continue with the malpractice suit as the real party in interest.[14]
¶ 11 On remand, Haskell filed a motion for summary judgment. On July 21, 2004, the court granted Haskell's motion and dismissed Soratsavong's case with prejudice based on the holding in Shepard Ambulance Inc., v. Helsell, Fetterman, Martin, Todd & Hokanson.[15]

DISCUSSION
¶ 12 We review summary judgments de novo, engaging in the same inquiry as the trial court.[16] Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[17] The motion should be granted if, after reviewing all the evidence, a reasonable person could reach only one conclusion.[18] All the facts and reasonable inferences from them are considered in the light most favorable to the nonmoving party.[19] Assertions that there are genuine issues of material fact will not defeat a summary judgment motion. There must be actual evidence.[20]
¶ 13 Soratsavong contends Haskell's negligence arose from his failure to file timely motions to vacate the default orders and judgments entered against him. He argues he retained Haskell for the specific purpose of vacating the default orders, but Haskell did not file a single motion to vacate the default orders and filed the wrong motion to vacate one of the two default judgments. He *1175 contends the trial court erred by granting Haskell's summary judgment motion because a prima facie defense on the issue of damages does not require a meritorious defense on liability.
¶ 14 Haskell argues the trial court did not err because Soratsavong failed to show that he suffered harm. Haskell asserts a motion to set aside the damages award any time prior to September 9, 1999, the date the damage amounts were entered, would have been fruitless because the September 11, 1996 judgment decided the issue of liability, leaving only the damage amounts blank. Further, he argues he could not file a motion to vacate the damage amounts because the entry of these amounts occurred after he had withdrawn as Soratsavong's counsel. Finally, he contends filing a motion to vacate the damage amounts would not have led to a different outcome because Soratsavong stipulated to the damages amount entered on September 9, 1999.
¶ 15 To establish a claim for legal malpractice, a plaintiff must prove (1) the existence of an attorney-client relationship, (2) an attorney's breach of his duty of care by act or omission, and (3) damage to the client that was (4) proximately caused by the attorney's breach of duty.[21] The finder of fact in a malpractice case must decide two issues: what a reasonable jury or fact finder in the initial cause of action would have done and whether the plaintiff would have fared better "but for" the attorney's alleged negligence.
¶ 16 Soratsavong asserts Haskell's negligent failure to file motions to vacate the default orders and default judgments caused his damages. To answer this, we must analyze whether a trial court would have vacated the default orders and judgments if the motions had been timely made. Generally an appellate court reviews decisions to grant or deny motions to vacate under an abuse of discretion standard.[22] But here we are reviewing an appeal from summary judgment, so we must engage in the same inquiry as the trial court and determine how the hypothetical motion to vacate would have been decided.[23]
¶ 17 Trial courts may vacate the damages portion of a default judgment even without proof that there is a meritorious defense to liability.[24] But because the September 11, 1996 judgments decided only the issue of liability and left the damage amounts blank, a motion to vacate required Soratsavong to assert a meritorious defense. Soratsavong admitted he fell asleep while driving and so could not assert a defense to liability even if a proper, timely motion had been made. Haskell could not have challenged the damage amounts in the September 11, 1996 default judgments because those amounts were not entered until September 9, 1999. Nor could he have challenged the amounts entered nunc pro tunc because he had already withdrawn as counsel for Soratsavong as of February 21, 1998. Finally, Soratsavong stipulated to the damage amounts on September 3 and 4, 1999, in both Sivilay and Napha's cases. Accordingly he was not harmed by Haskell's failure to file motions to vacate the judgments and cannot now assert he was damaged by Haskell's actions. Dismissal of his case was proper because Soratsavong could not establish a prima facie case of legal malpractice against Haskell without proving damages that were proximately caused by Haskell's negligence.
¶ 18 We affirm.
NOTES
[1] Although the parties are not legally married, Khamchanh and Sivilay treated their relationship as a marriage.
[2] Kommavongsa v. Haskell, 149 Wash.2d 288, 291, 67 P.3d 1068 (2003). This case between these parties was certified for direct review by Division III of our court to decide whether "a legal malpractice claim is assignable to an adversary in the same litigation that gave rise to the alleged legal malpractice." Id.
[3] Id.
[4] Id. at 292, 67 P.3d 1068.
[5] Id. at 291, 67 P.3d 1068.
[6] In October 1996, nine months remained to set aside the orders of default and eleven months remained to set aside the default judgments.
[7] Id. at 292, 67 P.3d 1068.
[8] Id.
[9] Id. at 292-93, 67 P.3d 1068.
[10] Id. at 293, 67 P.3d 1068.
[11] Id.
[12] Id. at 294, 67 P.3d 1068.
[13] Id. at 294-295, 67 P.3d 1068.
[14] Id. at 310, 67 P.3d 1068.
[15] 95 Wash.App. 231, 235, 974 P.2d 1275 (1999), review denied, 140 Wash.2d 1007, 999 P.2d 1259 (2000).
[16] Bank of Am. v. Hubert, 153 Wash.2d 102, 111, 101 P.3d 409 (2004) (citing Citizens for Responsible Wildlife Mgmt. v. State, 149 Wash.2d 622, 630, 71 P.3d 644 (2003)).
[17] CR 56(c); Bank of Am., 153 Wash.2d at 111, 101 P.3d 409.
[18] Trimble v. Wash. State Univ., 140 Wash.2d 88, 93, 993 P.2d 259 (2000) (citing Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993)).
[19] Id. (citing Clements, 121 Wash.2d at 249, 850 P.2d 1298).
[20] Id. (citing White v. State, 131 Wash.2d 1, 9, 929 P.2d 396 (1997)).
[21] Hizey v. Carpenter, 119 Wash.2d 251, 260-61, 830 P.2d 646 (1992); see also Bowman v. John Doe Two, 104 Wash.2d 181, 185, 704 P.2d 140 (1985) (once an attorney-client relationship is established, the elements for legal malpractice are the same as for negligence).
[22] See White v. Holm, 73 Wash.2d 348, 351, 438 P.2d 581 (1968).
[23] Shepard Ambulance, 95 Wash.App. at 237, 974 P.2d 1275.
[24] Id. ("It is the `policy of the law that controversies be determined on the merits rather than by default.'") (quoting Griggs v. Averbeck Realty, Inc., 92 Wash.2d 576, 581, 599 P.2d 1289 (1979)).