IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANGELINA SALAZAR,<br><br>     Appellant,<br><br>  v.<br><br>ERA LIVING, LLC, dba as IDA CULVER<br>HOUSE BROADVIEW,<br><br>     Respondent. | No. 80177-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

LEACH, J. — Angelina Salazar appeals a trial court order vacating a default judgment against Era Living, LLC pursuant to CR 60(b)(1). Because Salazar does not demonstrate that the trial court abused its discretion, we affirm.

FACTS

Between 2008 and 2015, Salazar worked as the admissions coordinator at Ida Culver House Broadview, a senior care facility in North Seattle. According to Salazar, the director of Ida Culver House Broadview engaged in inappropriate physical contact with her and asked intrusive questions about her personal life. After Salazar told him to stop, he became rude and difficult to work with.

On August 6, 2018, Salazar sued "Era Living, LLC, dba as Ida Culver House Broadview." Salazar alleged claims of sexual harassment based on a hostile work environment, unlawful retaliation, and constructive discharge, pursuant to chapter

Citations and pincites are based on the Westlaw online version of the cited material.

RCW 49.60, the Washington Law Against Discrimination (WLAD). She also asserted a claim for negligent infliction of emotional distress.

On August 9, 2018, Salazar personally served Fairchild Record Search with the summons and complaint. According to the Washington Secretary of State website, Fairchild Record Search is Era Living's registered agent.

Era Living did not appear or respond to the complaint. The trial court entered an order of default and a default judgment in the amount of $542,650.

Era Living learned of the judgment when it received a letter from Salazar's attorney on or about April 17, 2019. On May 16, 2019, Era Living filed a motion to vacate the default judgment pursuant to CR 55 and CR 60. Era Living supported its motion with the declarations of Tim McCoy and Matthew Bromen.

McCoy has served as Era Living's Chief Financial Officer and Vice President of Finance since May 1998. He stated a company called Broadview Development Associates II, A Limited Partnership ("Broadview") owned and operated Ida Culver House Broadview. McCoy also stated, Era Living has an agreement with Broadview to provide administrative services such as human resources, payroll, receipt of legal notices, and general operational support.

McCoy explained Era Living's standard procedure for receiving notice of legal proceedings at the time Salazar filed the lawsuit.

> As part of its administrative services agreement with Broadview, Era Living receives by email the service notices for Broadview as well. That system operated as follows: Era Living received legal notices by email from Fairchild Record Search ("Fairchild") attaching scanned copies of the legal papers. When an email notice from Fairchild came in, a designated Era Living administrative assistant reviewed the notices and any attachments, and forwarded them to the appropriate party (e.g., licensing issues go to administration,

2

garnishments go to payroll, etc.). If the administrative assistant responsible for intake had a question about the legal notice, he or she was trained to ask the administrative services manager or me. However, so as to not duplicate efforts, while the administrative manager and I were copied on the notice email, we did not open and read every notice. Rather, the administrative manager and I reviewed the notices only if the intake administrative assistant had questions or otherwise forwarded the notice email to our attention.

McCoy stated that, until Salazar filed her lawsuit, "Era Living's legal notices system has never missed a legal notice."

According to McCoy, Fairchild notified Era Living via email of Salazar's lawsuit in accordance with its usual practice on or about August 9, 2018. But, Era Living's administrative assistant responsible for legal notice intake "did not forward the email due to an oversight." Although McCoy and Era Living's administrative manager also received a copy of the email, they did not open it.

McCoy stated that Era Living was "[d]ismayed at missing a legal notice" and has since overhauled its notice review protocol. Under the new system, four people review each email notice from Fairchild, two administrative assistants, the administrative manager, and McCoy. Era Living keeps a detailed log of all notices received and actions taken. Fairchild has also revised its practices. Fairchild now follows up on each email if it does not receive confirmation of receipt from Era Living and also sends the hard copy originals to Era Living by mail or FedEx. McCoy stated, "Through these corrective measures, Era Living expects that the inadvertent oversight that occurred in this case will not happen again."

Bromen stated he had served as Era Living's director of human resources since September 1, 2011. He stated that Era Living had never employed Salazar, and that during the time that Salazar worked at Ida Culver House, her employer

3

was Broadview. Broadview also employed the Ida Culver House Broadview director. According to Bromen, Broadview "directed and controlled their work, enforced safe workplace practices and policies, and issued their paychecks." Era Living's role, in contrast, was to provide administrative support to Broadview.

Era Living asserted defenses to the merits of each of Salazar's claims. It also asserted, based on the declarations of McCoy and Bromen, that it was not liable for any of Salazar's claims because it was not Salazar's employer. It contended that its failure to appear in the action was due to mistake or excusable neglect, that it acted diligently to vacate the default judgment, and that vacation of the default would not prejudice Salazar.

The trial court granted Era Living's request to vacate the default judgment. Salazar appeals.

## STANDARD OF REVIEW

We review a trial court's decision vacating a default judgment for an abuse of discretion.[1] We will not overturn a trial court's decision on a CR 60(b) motion to vacate a judgment unless it plainly appears that the trial court abused its discretion.[2] A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds.[3] Our primary concern is that a trial court's decision on a motion to vacate a default judgment is just and equitable.[4]

---

[1] Little v. King, 160 Wn.2d 696, 702, 161 P.3d 345 (2007).
[2] Luckett v. Boeing Co., 98 Wn. App. 307, 309, 989 P.2d 1144 (1999).
[3] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).
[4] Little, 160 Wn.2d at 711.

4

We are less likely to reverse a trial court decision that sets aside a default judgment than a decision which does not.[5]

The trial court did not enter findings of fact or conclusions of law identifying the basis for its decision. But, we may affirm on any basis supported by the record.[6]

DISCUSSION

Washington generally disfavors default judgments because "[w]e prefer to give parties their day in court and have controversies determined on their merits."[7] CR 55 provides that "if a judgment by default has been entered, [the trial court] may likewise set it aside in accordance with rule 60(b)."[8] CR 60(b) lists 11 grounds upon which a party may seek relief from judgment. While Era Living did not specifically identify the grounds upon which it sought relief, the relevant basis appears to be CR 60(b)(1) "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order."

In general, to vacate a default judgment pursuant to CR 60(b)(1), the moving party must establish that (1) there is substantial evidence to support a prima facie defense to the claims asserted by the opposing party, (2) the moving party's failure to appear in the action was occasioned by mistake, inadvertence, surprise, or excusable neglect, (3) the moving party acted with due diligence after

---

[5] Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 582, 599 P.2d 1289 (1979).

[6] Amy v. Kmart of Wash., LLC, 153 Wn. App. 846, 868, 223 P.3d 1247 (2009).

[7] Morin v. Burris, 160 Wn.2d 745, 754, 161 P.3d 956 (2007).

[8] CR 55(c)(1).

5

notice of the entry of default, and (4) no substantial hardship will result to the opposing party.[9] The first two factors above are "primary" and the latter two are "secondary."[10] To determine whether the moving party has demonstrated a prima facie defense, the trial court must review the evidence and all reasonable inferences in the light most favorable to the moving party.[11] The moving party has presented "a prima facie defense if it produces evidence that, if later believed by the trier of fact, would constitute a defense to the claims presented."[12] In making its determination, the trial court does not weigh the evidence.[13]

When the moving party is able to demonstrate a "strong or virtually conclusive defense," courts will generally spend little time inquiring into the reasons for the default, "provided the moving party is timely with his application and the failure to properly appear in the action in the first instance was not willful."[14] In other words, the moving party must demonstrate that (1) it has a strong or virtually conclusive defense to the claim asserted against it, (2) it has timely moved to vacate the default judgment, and (3) its failure to timely appear was not willful.[15] This is because "[i]f a default judgment on a meritless claim is allowed to stand, justice has not been done".[16] To determine that the moving party's defense is

---

[9] White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).
[10] Little, 160 Wn.2d at 352.
[11] Rosander v. Nightrunners Transport, Ltd., 147 Wn. App. 392, 404, 196 P.3d 711 (2008).
[12] Rosander, 147 Wn. App. at 404-05.
[13] Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wn. App. 829, 835-36, 14 P.3d 837 (2000).
[14] White, 73 Wn.2d at 352-53.
[15] TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 205, 165 P.3d 1271 (2007).
[16] TMT, 140 Wn. App. at 205.

strong or virtually conclusive, the court must examine all the evidence, not merely that which if believed would support the defense.[17]

Salazar contends the trial court erred by vacating the judgment because Era Living failed to present substantial evidence establishing a prima facie defense. We conclude that Era Living established a "strong or virtually conclusive defense" to at least one of Salazar's claims.

To establish a hostile work environment claim based on sexual harassment, an employee must show (1) offensive and unwelcome conduct that (2) occurred because of sex that (3) was serious enough to affect the terms or conditions of employment and (4) can be imputed to the employer.[18] A plaintiff must file a hostile work environment claim within the applicable statute of limitations, which is three years.[19] A claim is timely only if at least one of the acts constituting sexual harassment occurred during the limitations period.[20]

Salazar filed her complaint on August 6, 2018. Accordingly, the claim must arise from conduct occurring on or after August 5, 2015. Salazar left her job at Ida Culver House Broadview on August 15, 2015. Her complaint identifies three incidents of harassing conduct: (1) the director sitting on her desk with what appeared to be an erection and asking questions about her relationship status; (2) the director brushing against her and smelling her hair at a holiday party; and (3)

---

[17] TMT, 140 Wn. App. at 202-03.

[18] Glasgow v. Georgia–Pac. Corp., 103 Wn.2d 401, 405, 693 P.2d 708 (1985).

[19] Goodman v. Boeing Co., 75 Wn. App. 60, 77, 877 P.2d 703 (1994); RCW 4.16.080(2).

[20] Antonius v. King County, 153 Wn.2d 256, 271, 103 P.3d 729 (2004).

the director touching her hair during a staff meeting. Salazar's complaint does not allege when the acts of sexual harassment acts took place. But, in exit interviews that Salazar provided in response to the motion to vacate, she stated that the first incident occurred sometime in late summer or early fall 2013, the second incident was at a holiday party in December 2013, and the third incident was sometime in summer 2014 or early 2015. Salazar did not allege any acts of sexual harassment occurring after August 5, 2015. Thus, Era Living had a strong defense that this claim was time-barred.

Because Era Living established a strong defense to at least one of Salazar's claims, we turn to the remaining White factors. Salazar does not dispute that Era Living acted with diligence in seeking to vacate the default judgment. Thus, we focus on whether Era Living's failure to timely appear was willful.

"Willful" is defined as "done deliberately: not accidental or without purpose: intentional, self-determined."[21] A failure to comply with a court order is willful if it is "without reasonable excuse or justification."[22]

Here, McCoy's declaration explained that Era Living had a protocol for reviewing and responding to legal notices. He stated that an administrative assistant failed to follow the protocol due to an oversight. After discovering the default judgment, both Era Living and its registered agent strengthened their notification systems to include additional safeguards. McCoy expressed

---

[21] Webster's Third New International Dictionary 2617 (2002); Black's Law Dictionary 1630 (8th ed. 2004).
[22] Rivers v. Washington State Conference of Mason Contractors, 145 Wn.2d 674, 687, 41 P.3d 1175 (2002).

confidence that the measures would prevent such an oversight from ever occurring again. Nothing in the record shows that Era Living deliberately or intentionally failed to respond to Salazar's lawsuit. The trial court could have reasonably determined that Era Living's conduct was not willful.[23]

Affirmed.

_Leach, J._

WE CONCUR:

_Andrus, A.C.J._          _Mann, C.J._

---

[23] Showalter v. Wild Oats, 124 Wn. App. 506, 514, 101 P.3d 867 (2004); Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson, 95 Wn. App. 231, 242-35, 974 P.2d 1275 (1999).