**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In re the Marriage of | No. 47230-9-II |
| CHRISTOPHER RIEHLE, | |
| Appellant, | |
| v. | |
| PAULA MURPHY, aka PAULA RIEHLE, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Christopher Riehle appeals the superior court's denial of his motion to vacate a default order and order of child support, which were entered against him pursuant to a petition to modify a child support order made by Riehle's ex-wife, Paula Murphy. Riehle argues the superior court abused its discretion in denying his motion to vacate the default order because he did not receive notice, and thus, due process was violated. Riehle also argues that the superior court abused its discretion in failing to vacate the order of child support because the superior court improperly imputed the median net monthly income to Riehle.

We hold that Riehle's due process argument fails. However, the superior court abused its discretion in denying Riehle's motion to vacate the default order because the default order improperly imputed a median net monthly income to Riehle. Therefore, we reverse.

No. 47230-9-II

FACTS

A.    PRIOR HISTORY

Riehle and Murphy finalized their divorce in 2008.  The couple had two children while they were married.

On April 15, 2011, the superior court entered a modified order of child support (April 2011 child support order).  In paragraph 3.2 of the April 2011 child support order, Riehle's "Service Address" was listed as "3403 S.E. Stevens Rd., Corbett, OR 97019," (3403 Address.)  Clerk's Papers (CP) at 88.  In the same paragraph, and in larger font that was both bolded and italicized, it said:

> The obligor parent [Riehle] must immediately file with the court and the Washington State Child Support Registry, and update as necessary, the confidential information form required by RCW 26.23.050.
>
> The obligor parent shall update the information required by paragraph 3.2 promptly after any change in the information.  The duty to update the information continues as long as any support debt remains due under this order.

CP at 88 (boldface, italics, and some capitalization omitted).

Paragraph 3.4 provided for "Service of Process" and, in the larger bolded and italicized font, said:

> Service of process on the obligor at the address required by paragraph 3.2 or any updated address . . . may be allowed or accepted as adequate in any proceeding to establish, enforce or modify a child support order between the parties by delivery of written notice to the obligor or obligee at the last address provided.

CP at 89 (boldface, italics and some capitalization omitted).

The April 2011 child support order calculated the child support obligation amount owed based on Riehle's actual monthly net income of $1,338.66.  It required Riehle to pay a total of

2

$210.66 per month in child support for both children, and directed that the monthly payment be made through the Division of Child Support and the Washington State Support Registry. Riehle was also allowed to claim the youngest child as a tax exemption in odd numbered years. At the time of the April 2011 child support order, both of Riehle's children were under the age of 18. When the current litigation began in the summer of 2013, the eldest child had turned 18, leaving Riehle obligated to pay child support for only the youngest child.

B.    PRESENT DISPUTE

On September 24, 2013, Murphy filed a summons, petition for modification of child support, proposed worksheets, and a declaration of mailing with the Kitsap County Superior Court. The September 24 declaration of mailing stated that the "Summons for Modification of Child Support, Petition for Modification of Child Support, Sealed Financial Source Documents and Washington State Child Support Schedule Worksheet" were mailed on August 28, 2013 to the 3403 Address. CP at 21. The petition stated that the most recent child support order was entered on August 11, 2008 and required Riehle to pay $100 per month to support the youngest child. The accompanying proposed worksheets imputed the median net monthly income of $3,569 to Riehle.

On December 9, 2013, Murphy filed an amended summons, amended petition for modification of child support, proposed worksheets, and a declaration of mailing. The declaration of mailing stated that the "Summons for Modification of Child Support, Petition for Modification of Child Support, Sealed Financial Source Documents and Washington Child State Support Schedule" were mailed on December 6, 2013 to the 3403 Address. CP at 43. The amended petition to modify child support stated that the most recent child support order was entered on April 15, 2011, not August 11, 2008, and required Riehle to pay $210.66 per month to support only the

youngest child. The accompanying proposed worksheets again imputed a median net monthly income of $3,569 to Riehle.

On December 12, 2013, the mailings from December 6, 2013 were returned to Murphy's attorney with the 3403 Address crossed out, the words "RETURN TO SENDER[,] NO SUCH NUMBER[,] UNABLE TO FORWARD[,] RETURN TO SENDER" stamped on the front of the envelope next to and below the 3403 Address, and "NSN" handwritten to the left of the 3403 Address. CP at 45. Murphy's attorney acknowledged receipt of the returned mailings on December 13, 2013.[1]

C.      DEFAULT ORDER

On February 11, 2014, Murphy moved for a default order, citing the summons, petition for modification, and worksheets that were mailed in August 2013,[2] and the declaration of mailing from December 6, 2013. The superior court entered a default order on the same day, February 11, 2014. The default order stated that Riehle was served on December 6, 2013 with the documents that were mailed in August 2013. The record does not indicate whether the envelope containing the December 6, 2013 mailings, which was returned by the postal service because "no such number" existed, was filed or otherwise brought to the superior court's attention when the default order was requested. CP at 45.

---

[1] The record does not indicate whether Murphy's attorney acknowledged receipt of the mailings to the 3403 Address that would have been returned after the August 28 mailing.

[2] The motion for default states the documents were mailed on August 29, 2013, whereas the declaration of mailing is dated August 28, 2013. *Compare* CP at 49 *with* CP at 21.

The default order "granted the relief requested in the petition" to Murphy. CP at 54. Pursuant to the default order, the superior court entered a new child support order (February 2014 child support order) as part of the relief requested. The February 2014 child support order incorporated by reference Murphy's proposed worksheet that imputed Riehle's net monthly income to be $3,569. Based on this imputed income, the February 2014 child support order required Riehle to pay $684.77 per month, which was "an upward modification that has caused an underpayment of $474.00" for the period between September 24, 2013 through November 4, 2013.[3] CP at 58, 63. The February 2014 child support order also granted Murphy's request to claim the youngest child as a tax exemption every year.

D.    MOTION TO VACATE

On December 19, Riehle appeared via counsel, filing a "Response to Amended Petition for Modification of Child Support" and a "Motion and Declaration for CR 60 Relief from 2/11/14 Order of Default; FFCL on Modification of Child Support; Order on Modification of Child support; and Order of Child Support & Child Support Worksheets." CP at 74, 76. In the declaration, Riehle's states that he never received notice of any of the filings, that the 3403 Address is not his current or prior address, and that his prior address was "34043 SE Stevens Dr. in Corbett, OR 97019." CP at 78.

Riehle moved twice since living in Corbett and currently lives in West Linn, Oregon. Riehle states that Murphy knew he had moved from Corbett, and that Murphy and the couple's children knew his current address. In support, Riehle points out that the youngest child visited

---

[3] There is no information in the record to explain where the November 4, 2013 date comes from.

him in West Linn shortly before the December 9, 2013 filings were mailed and attaches an e-mail conversation between Riehle and Murphy regarding the youngest child that occurred on December 1, 3, and 6, 2013.

As of late September 2014, Riehle became employed full time by the United States Postal Service, making $15.30 per hour, for a net monthly income of $2,087.54. Before that, he was sporadically employed between September 2013 and February 2014 doing construction and freelance writing. In 2013, Riehle received $5,710 in unemployment compensation, which was reported on his taxes as his entire income. In 2012, Riehle received $13,536 in unemployment compensation and reported $14,536 as his total income for 2012.

Also in the declaration, Riehle states he first became aware of the February 2014 child support order in late September 2014 when the Oregon Child Support Enforcement Division notified him that his driver's license would be suspended as a result of the approximately $5,000 he owed in child support. Riehle states that he never received any of the orders entered on February 2014. Riehle maintains that he exchanged e-mails with Murphy's attorney after receiving the letter from the Oregon Child Support Enforcement Division, but Murphy's attorney was unwilling to consider modifying the February 2014 child support order. Riehle retained his own attorney "once [he] had the means to pay for the retainer." CP at 80. Riehle's attorney began representing Riehle in this matter on October 15, 2014. In response to the motion to vacate, Murphy submitted her own declaration. In her declaration, Murphy states that she "do[es] not keep track of where [Riehle] lives" and tries to minimize the contact she has with him. CP at 203. Riehle submitted a reply declaration, acknowledging that he did not update the superior court with his new addresses and did not notice the incorrect 3403 Address on the April 2011 child support order.

6

E.       MOTION FOR ORDER TO SHOW CAUSE

On January 9, 2015, the superior court heard argument on Riehle's motion for an order to show cause why the order of default should not be vacated.  The superior court denied the motion, and in a memorandum decision found that (1) Riehle did not keep his address information current, despite the affirmative duty to do so; (2) Riehle became aware of the default order and child support order in June 2014, but he did not bring a motion to show cause until December 2014; (3) Riehle knew how to file papers as he has appeared pro se several times during the case; (4) there was no fraud or misrepresentation; (5) there was no basis for vacating the order under CR 60(b); and (6) nothing precluded Riehle from seeking a modification of the child support order due to a change in circumstance.

On February 4, Riehle appealed the January 9, 2015 memorandum decision to this court. This court sent a letter to Riehle on February 25, notifying him that he could not appeal a memorandum decision on a motion to vacate.

On March 6, the order denying Riehle's motion to vacate pursuant to CR 60(b)(1), (4), and (11) was filed.[4]  In the March 6 order, the superior court found that (1) it was reasonable and

---

[4] Civil Rule 60(b) allows a court to relieve a party

from a final judgment, order, or proceeding for the following reasons:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

. . . .

(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

7

without mistake for Murphy to rely on the 3403 Address listed in the April 2011 child support order for notice and service; (2) Riehle moved twice since the April 2011 child support order was entered and he "had an affirmative duty to update his address pursuant to RCW 26.23.050(5)(m)(i) and RCW 26.23.050(5)(m)(ii) and failed to do so"; (3) Riehle had sufficient familiarity with court filings and legal process to have been more prompt in seeking relief from the February 2014 child support order; (4) "there was no fraud, misrepresentation, or misconduct in" Murphy's use of the 3403 Address; and (5) Riehle did not present circumstances or facts to warrant vacating the default order and child support order. CP at 224.

Riehle appeals.

## ANALYSIS

A.    LEGAL PRINCIPLES

We review a superior court's ruling on a motion to vacate a default order or default judgment under CR 60(b) for abuse of discretion. *Showalter v. Wild Oats*, 124 Wn. App. 506, 510, 101 P.3d 867 (2004); *Fowler v. Johnson*, 167 Wn. App. 596, 604, 273 P.3d 1042 (2012). A superior court abuses its discretion "when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons." *Fowler*, 167 Wn. App. at 604. There is, however, no question of superior court discretion when a judgment is void. *In re Marriage of Maxfield*, 47 Wn. App. 699, 703, 737 P.2d 671 (1987). A judgment entered in violation of due process, without notice and opportunity to be heard, is void. *Ware v. Phillips*, 77 Wn.2d 879, 884, 468 P.2d 444 (1970).

---

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

The fundamental consideration when reviewing a superior court's decision on whether to vacate a default order or judgment is "'whether or not justice is being done.'" *Little v. King*, 160 Wn.2d 696, 703, 161 P.3d 345 (2007) (quoting *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979)). "[W]here the determination of the trial court results in the denial of a trial on the merits an abuse of discretion may be more readily found than in those instances where the default judgment is set aside and a trial on the merits ensues." *White v. Holm*, 73 Wn.2d 348, 351-52, 438 P.2d 581 (1968).

When parties moving to vacate default judgments under CR 60(b) are unable "to establish that they actually appeared or substantially complied with the appearance requirements," the default judgment may still be set aside if the movants satisfy the four factor test outlined in *White*, 73 Wn.2d at 352. *Morin v. Burris*, 160 Wn.2d 745, 755, 161 P.3d 956 (2007).

The *White* court explained the four part test for vacating judgments as follows:

> The discretion which the trial court is called upon to exercise in passing upon an appropriate application to set aside a default judgment concerns itself with and revolves about two primary and two secondary factors which must be shown by the moving party. These factors are: (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.

73 Wn.2d at 352. "'These factors are interdependent; thus, the requisite proof that needs to be shown on any one factor depends on the degree of proof made on each of the other factors." *Hous. Auth. of Grant County v. Newbigging*, 105 Wn. App. 178, 186, 19 P.3d 1081 (2001) (quoting *Norton v. Brown*, 99 Wn. App. 118, 124, 992 P.2d 1019 (1999)).

When determining whether substantial evidence supports a prima facie defense, the superior court must make all reasonable inferences from the evidence in favor of the party moving to vacate the default orders. *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 449, 332 P.3d 991 (2014), *review denied*, 182 Wn.2d 1006 (2015). Substantial evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person of an assertion's truth. *In re Marriage of Kim*, 179 Wn. App. 232, 244, 317 P.3d 555, *review denied*, 180 Wn.2d 1012 (2014). If the defaulting party "demonstrate[s] a strong or virtually conclusive defense to the opponent's claim, scant time will be spent inquiring into the reasons which occasioned entry of the default," so long as the motion is timely and the failure to appear was not willful. *White*, 73 Wn. App. at 352; *see also In re Welfare of S.I.*, 184 Wn. App. 531, 544, 337 P.3d 1114 (2014) *review denied*, 183 Wn.2d 1002 (2015), ("if a party offers evidence of a meritorious defense, a trial court more likely abuses its discretion should it fail to vacate a default order.").

When the moving party does not have a virtually conclusive defense, the reason for the party's delay is also a primary factor to be weighed by the superior court. *White*, 73 Wn.2d at 353-54. The superior court has broad discretion over the issues of mistake and excusable neglect and exercises that discretion on a case-by-case basis. *Rosander v. Nightrunners Transport, Ltd.*, 147 Wn. App. 392, 406, 196 P.3d 711 (2008).

B.    ORDER ON MOTION FOR DEFAULT

1.    Notice

Riehle argues that the superior court abused its discretion in failing to vacate the February 2014 order of default because Murphy knew he had not received notice of the documents mailed

on August 28 nor the documents mailed on December 6, and this resulted in a deprivation of his due process rights. We hold that Riehle's due process rights were not violated.

For due process to be satisfied, the notice provided must be "reasonably calculated under all the circumstances to apprise a party of the pendency of the action and provide an opportunity to be heard." *In re Marriage of McLean*, 132 Wn.2d 301, 309, 937 P.2d 602 (1997). Riehle argues that *McLean* "specifically distinguishes between a non-valid address and a 'valid address,'" and that because Murphy sent notice to a non-valid address, due process was not satisfied. Br. of Appellant at 9 (quoting *McLean*, 132 Wn.2d at 313). Riehle's argument hinges on the "valid address" language in the following sentence from *McLean*, "We conclude that under all the circumstances, there is a reasonable probability that if a petitioning parent mails pleadings in child support modification proceedings to a *valid address* the nonpetitioning parent will receive them." 132 Wn.2d at 313 (emphasis added).

In *McLean*, our Supreme Court considered whether RCW 26.09.175(2)[5] and due process were satisfied when pleadings to modify child support were "served upon the nonpetitioning parent

---

[5] RCW 26.09.175 states:

> (2)(a) The petitioner shall serve upon the other party the summons, a copy of the petition, and the worksheets in the form prescribed by the administrator for the courts. If the modification proceeding is the first action filed in this state, service shall be made by personal service. If the decree to be modified was entered in this state, service shall be by personal service or by any form of mail requiring a return receipt. Proof of service shall be filed with the court.
>
> (b) If the support obligation has been assigned to the state pursuant to RCW 74.20.330 or the state has a subrogated interest under RCW 74.20A.030, the summons, petition, and worksheets shall also be served on the attorney general; except that notice shall be given to the office of the prosecuting attorney for the county in which the action is filed in lieu of the office of the attorney general in

by certified mail, return receipt requested, but the mailing is returned marked unclaimed." *McLean*, 132 Wn.2d at 303. Our Supreme Court held that "such service satisfies the statute and due process." *Id.*

We hold that the "valid address" is the address identified by the nonpetitioning parent to the court as the address to which service should be made. In this case, that "valid address" is the 3403 Address because it is identified as Riehle's service address in the April 2011 child support order, and Riehle signed and presented that order. The reasoning in *McLean* supports this holding.

First, as the *McLean* court noted, "The plain language of RCW 26.09.175(2) does not require actual receipt." 132 Wn.2d at 308. Second, regarding the due process inquiry, our Supreme Court reasoned, "It is well settled that notice by mail may satisfy due process requirements," and "mailed notice has been widely recognized as sufficient notice of a proceeding to modify child support." *Id.* at 306, 308. "Unlike the initial service of process when a dissolution is sought, service of the pleadings in a modification action come as no surprise to a parent who knows that the terms of the dissolution decree regarding children are always subject to modification." *Id.* at 313. Therefore, "due process does not require actual receipt of mailed notice of the modification proceedings even though a significant individual interest is at stake where modification of child support is sought." *Id.* at 312.

Here, the April 2011 child support order provided Riehle's address for purposes of service in paragraph 3.2, and provided in paragraph 3.4 that service at the address listed in paragraph 3.2 "may be allowed or accepted as adequate in any proceeding to . . . modify a child support order."

those counties and in the types of cases as designated by the office of the attorney general by letter sent to the presiding superior court judge of that county.

CP at 89 (boldface, italics, and some capitalization omitted).  Paragraph 3.2 required that Riehle "*shall* update the information required by paragraph 3.2 promptly after any change in the information."  CP at 88 (emphasis added) (boldface, italics, and some capitalization omitted). Paragraph 3.2 also required that Riehle "*must* immediately file with the court . . . and update as necessary, the confidential information form required by RCW 26.23.050."  CP at 88 (emphasis added) (boldface, italics, and some capitalization omitted).  RCW 26.23.050(5)(m)(i) and .050(7) required Riehle to have "[p]romptly file[d]with the court" an updated "current residence and mailing address[]" when such became necessary.

Riehle acknowledged that he knew he had a duty to update the court with his current address but failed to do so.  Br. of Appellant at 2 ("Appellant acknowledges that he made a mistake by neglecting to keep the court updated as to his current address.").  While Riehle's former attorney may have drafted the April 2011 child support order, that attorney withdrew, and Riehle signed and presented the April 2011 child support order.  By presenting and signing the order, Riehle affirmed the accuracy of its contents.  By failing to update the information contained in paragraph 3.2, whether to the correct address or to provide one of his later addresses, Riehle failed to comply with the provisions in the child support order and RCW 26.23.050.  Murphy, on the other hand, complied with the statutes and the requirements in the child support order by mailing notice of the motion to modify to the address Riehle provided in paragraph 3.2 of the April 2011 child support order.  Accepting Riehle's argument would require us to hold that Riehle's due process rights were violated when Murphy complied with the child support order and controlling statutes.  We decline to do that.  Therefore, we hold that Riehle was not deprived due process because Murphy's mailing of the documents via certified mail to the address provided by Riehle to the court as the address

for service complied with the requirements of the April 2011 child support order, the governing statutes, and case law.

However, while Riehle was not deprived of due process, we hold that the superior court abused its discretion in denying Riehle's motion to vacate the default order because the default order "granted the relief requested" by Murphy, which included the child support order that imputed income to Riehle. CP at 54. As discussed below, income was improperly imputed to Riehle in light of Riehle's virtually conclusive evidence that the imputation of income was in error. Therefore, because the default order included the improperly imputed income to Riehle, the superior court abused its discretion in denying Riehle's motion to vacate the default order.

2.       Child Support Order

Riehle argues that the superior court abused its discretion in denying his motion to vacate the February 2014 child support order because the superior court erred in imputing the median net monthly income to Riehle on the February 2014 child support order. Specifically, Riehle argues that the superior court erred because RCW 26.19.071(6) provides the proper procedure for imputing an income to a parent, and the superior court did not follow the statutory procedure. We agree.

RCW 26.19.071(6) dictates when and how income is imputed to a parent. The statute says:

> The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation. Income shall not be imputed for an unemployable parent. Income shall not be imputed to a parent to the extent the parent is unemployed or significantly

14

underemployed due to the parent's efforts to comply with court-ordered reunification efforts under chapter 13.34 RCW or under a voluntary placement agreement with an agency supervising the child. In the absence of records of a parent's actual earnings, the court shall impute a parent's income in the following order of priority:

(a) Full-time earnings at the current rate of pay;

(b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;

(c) Full-time earnings at a past rate of pay where information is incomplete or sporadic;

(d) Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, is recently coming off public assistance, aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a high school student;

(e) Median net monthly income of year-round full-time workers as derived from the United States bureau of census, current population reports, or such replacement report as published by the bureau of census.

Again, we consider the factors from *White*, 73 Wn.2d at 352, in determining whether the superior court abused its discretion in denying Riehle's motion to vacate the February 2014 child support order.

Here, Riehle has presented substantial evidence supporting a defense to the imputation of the median net monthly income; thus, satisfying the first factor in *White*. 73 Wn.2d at 352. Riehle presented evidence in his declarations, and in the attachments to his declarations, of his employment, net income, and expenses. The information contained in the declarations and associated attachments present at least a prima facie defense to, and more likely conclusive proof

15

against, imputing the median net monthly income to Riehle.[6] Therefore, Riehle establishes the first factor in the *White* analysis.

Having demonstrated a virtually conclusive defense to the imputation of a median net income, we need spend little time inquiring into the reasons default judgment was entered so long as the motion to vacate was timely and Riehle's failure to appear was not willful. *White*, 73 Wn. App. at 352. Here, Riehle filed his response to Murphy's amended petition and filed a motion to vacate the default order and judgment on December 19, 2014. CP at 74, 76. This was within the one year required by CR 60(b) and was thus timely made. Additionally, nothing in the record indicates Riehle's failure to appear was willful. Therefore, because the fundamental consideration in our inquiry is "'whether or not justice is being done,'" and the record shows the imputation of a median net monthly income upon Riehle was not properly imposed under the statute and results in child support payments significantly higher than would be required based on his actual earnings, we hold the trial court abused its discretion in denying the motion to vacate. *Little*, 160 Wn.2d at 703 (quoting *Griggs*, 92 Wn.2d at 582).

The third factor requires Riehle to have acted with due diligence after he discovered a default judgment had been entered against him. *White*, 73 Wn.2d at 352. Here, Riehle states that he discovered the default judgment in late September 2014; he then exchanged e-mails with Murphy's attorney to no avail, and then hired an attorney when he could afford the retainer. He

---

[6] Also, the superior court did not enter findings regarding factors listed in the statute, such as "work history, education, health, and age," it might have considered in determining whether Riehle was "voluntarily underemployed or voluntarily unemployed." RCW 26.19.071. Similarly, the superior court did not enter findings explaining why it declined to impute income based on one of the four methods it was required to consider before imputing the median net monthly income. RCW 26.19.071(6)(a)-(e).

was represented by counsel as of October 15, 2014. Through retained counsel, Riehle appeared on December 19, 2014, filing several detailed documents contesting the default judgment. We hold that Riehle acted with due diligence after discovering the default judgment because he immediately contacted Murphy's attorney, hired his own attorney when he could afford one, and filed all of the necessary documents within approximately three months of learning of the default order and not more than a year after the default order was entered. *See* CR 60(b) ("The motion shall be made within a reasonable time and for reasons (1), (2), or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken."). Therefore, Riehle establishes the third factor in the *White* analysis.

The fourth factor requires that Murphy not suffer a substantial hardship as a result of the order's vacation. *White*, 73 Wn.2d at 352. The superior court did not enter findings regarding whether Murphy would suffer a substantial hardship if the February 2014 child support order were vacated. The record indicates that Riehle's current child support obligation, as a result of the February 2014 child support order, is greater than the amount he would owe had his income not been imputed as the median net monthly income. Also, Riehle is not asking for Murphy to repay any overpayment, but is instead asking for a credit on future support payments.

Murphy stated in her declaration to the superior court that vacating the February 2014 child support order would cause her financial hardship because that order allowed her to claim the youngest child for tax purposes, and she had already done so, so vacating the order would cause her to have to file an amended return or relitigate. Murphy declared no other hardship. First, the possibility of litigation "is an insufficient basis for the court to find a substantial hardship on the nonmoving party." *Gutz v. Johnson*, 128 Wn. App. 901, 920, 117 P.3d 390 (2005), *aff'd sub nom.*

17

*Morin*, 160 Wn.2d 745. Second, the record does not support Murphy's claim of hardship. Murphy's declaration was signed on January 7, 2015. Therefore, at the time of her declaration, Murphy would have claimed the youngest child for the 2014 tax year. But, under the April 2011 child support order, Murphy was entitled to claim the youngest child for 2014 anyway. CP at 91 ("Tax exemptions shall be allocated as follows: [youngest child] to the father for 2011 and all odd numbered tax years"). Therefore, because nothing in the record indicates that Murphy would suffer a substantial hardship as a result of the February 2014 child support order being vacated, the fourth factor of the *White* analysis is established.

Thus, the *White* factors support Riehle's motion to vacate the February 2014 child support order. Because Riehle established a virtually conclusive defense to the imputation of median net income, equity supports vacation of the February 2014 child support order. Therefore, we hold that the superior court abused its discretion in denying Riehle's motion to vacate the February 2014 child support order.

## ATTORNEY FEES

Riehle requests attorney fees incurred in responding to the motion to modify and in moving the superior court to vacate the February 2014 orders. Riehle does not offer any authority to support his request. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities," but may assume that, after diligent search, the party has found none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We deny Riehle's request for attorney fees.

No. 47230-9-II

CONCLUSION

We hold that Riehle was not denied due process. However, we hold the superior court abused its discretion in denying Riehle's motion to vacate the February 2014 default order and the child support order because both granted the relief that Murphy requested, which included improperly imputing a median net monthly income to Riehle when Riehle presented virtually conclusive evidence that the imputation of median net income was in error. Therefore, we reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, J.

_____
Bjorgen, C.J.

19