[No. 65207-9-I.   Division One.   April 9, 2012.]

AMBER D. FOWLER, *Appellant*, v. DONALD RUSSELL JOHNSON ET AL., *Respondents*.

*Philip J. Buri* (of *Buri Funston Mumford PLLC*), for appellant.

*Christon C. Skinner* (of *Law Office of Skinner & Saar PS*); and *Catherine W. Smith* and *Ian C. Cairns* (of *Smith Goodfriend PS)*, for respondents.

¶1 SPEARMAN, A.C.J. — This appeal arises from a wage dispute between two dermatologists, Amber Fowler and her former employer Donald Johnson. Fowler filed a lawsuit against Johnson, alleging four claims. One of her claims was for unpaid wages, for which she sought double damages. When Johnson did not answer, Fowler obtained an order of default. At a subsequent hearing Fowler was awarded damages in an amount that included double damages for unpaid wages. The award was later reduced to a default judgment. Johnson became aware of the lawsuit after receiving a writ of garnishment. He filed a motion to vacate the order of default and the corresponding default judgment (default orders), which the trial court initially denied. On reconsideration, the court found the default orders on the claim for unpaid wages and double damages should be vacated. But because the court concluded it lacked the authority to vacate the default orders on only one claim, it also vacated the default orders on the remaining three claims. Fowler appeals, arguing that the court erred in concluding it lacked authority to vacate the default orders only as to one claim. We agree and hold that the court

abused its discretion because its decision was based on an incorrect standard of law. We reverse and remand.

### FACTS

¶2 Johnson is a dermatologist and the owner of Island County Dermatology (ICD), which operates clinics and medical spas. Johnson hired Fowler around August 2006 to work at ICD as a dermatologist. Fowler agreed to a compensation formula under which she would receive two types of compensation: (1) wages based on a percentage of her receivables and (2) spa referral fees. In November 2008, Fowler decided to leave ICD to open her own practice and notified Johnson. They discussed her financial status, and Fowler received written confirmation of their prior agreement.

¶3 When Fowler left ICD in December 2008, she believed Johnson owed her $209,259.00 in unpaid wages. When payments were not forthcoming, Fowler retained counsel, Amy Robinson. In January and February 2009, Robinson sent several demand letters to Johnson. Johnson sent Fowler three checks for wages in the amounts of $28,183.99, $17,077.21, and $12,991.65. All three were rejected due to insufficient funds. Johnson subsequently wrote valid checks totaling $45,261.20, leaving what Fowler believed to be $163,997.80 in unpaid wages. As for spa referral fees, Fowler agreed to accept three monthly installments of $8,666.00. Johnson paid the first two installments but not the third.

¶4 In March 2009, Robinson learned that Johnson had hired attorney Christon Skinner to represent him regarding Fowler's complaints. Robinson contacted Skinner and forwarded the prior communications with Johnson. Skinner asked Robinson to direct any further correspondence about Fowler's compensation complaints to him. Skinner and Robinson communicated several times from March to April 2009. The record is unclear as to the date of their last correspondence.

¶5 On June 3, 2009, Fowler filed suit against Johnson and ICD, alleging:

(1) Breach of contract (wages);

(2) Breach of contract (spa referral fees);

(3) Violation of RCW 49.48.010 and RCW 49.52.050 (unpaid wages, damages to be doubled pursuant to RCW 49.52.070);[1]

(4) Violation of the uniform commercial code, RCW 62A.3-501 through -550 (dishonored checks).

The claims were based on the allegation that Johnson had not paid wages and referral fees owed to Fowler. A process server delivered copies of the summons and complaint to Johnson personally on June 9. Skinner was not served with copies of the summons and complaint. Johnson did not open the documents when he received them.

¶6 Johnson did not answer the complaint within 20 days as required by CR 4(a)(2). On July 1, Robinson's co-counsel, Ken Karlberg, called Skinner, who was out of town, and left a message. Skinner did not call back. On July 15, Fowler moved for entry of default, noting the motion for July 24, 2009. Robinson mailed copies of the pleadings to Johnson by certified mail. Johnson still did not file an answer or respond to the motion for default. He claimed he did not receive the motion. Johnson did not appear at the hearing on July 24, and the trial court entered an order of default.

¶7 On August 7, 2009, the trial court held an evidentiary hearing on Fowler's alleged damages. It entered findings of fact and conclusions of law, which were subsequently amended. The court found that Johnson owed Fowler $163,997.80 in wages and $8,666.00 in spa referral fees. The court further found that the unpaid wages constituted wrongfully withheld wages that could support an award of double

---

[1] RCW 49.52.070 is the "enforcement provision of RCW 49.52.050" and "states that any employer who violates RCW 49.52.050 shall be liable to the aggrieved employee in a civil action for twice the wages it unlawfully and willfully withheld." *Dice v. City of Montesano*, 131 Wn. App. 675, 687, 128 P.3d 1253 (2006).

damages and attorney's fees under RCW 49.52.050(2) and RCW 49.52.070. On August 28, the court entered a total amended default judgment in the amount of $363,535.07, which Fowler recorded in Island County.

¶8 Johnson and Skinner became aware of the default orders when they received a writ of garnishment on September 25, 2009. Skinner entered a formal appearance on September 28 and filed a motion to vacate the default orders on October 2. In the motion to vacate, based on CR 55(c) and CR 60(b), Johnson argued mistake, inadvertence, surprise, or excusable neglect based on his belief that (1) communications between Robinson and Skinner had resolved the dispute, (2) the summons and complaint that he had been served was of a similar nature to the informal negotiation documents that he had previously received by service, and (3) his counsel had been served with the documents and was handling the case. Johnson also claimed he had been preoccupied with his wife's medical condition. In addition, Johnson asserted a defense to Fowler's claims: "Specifically, the amounts claimed by the Plaintiff are in excess of what the parties agreed to and are not based on an accurate or actual accounting of patient revenue attributed to services provided by the Plaintiff to the Defendant, Island County Dermatology, PLLC."[2] Johnson also disputed Fowler's claim for double damages, arguing, "[T]he only way that the [double damages] penalty is lawfully imposed against an employer is if an employee can show a *criminal* violation of RCW 49.52.050(1) or (2)."[3]

---

[2] The evidence to support Johnson's defense was contained in his declaration in support of the motion to vacate the order of default and default judgment. Johnson stated, "I sincerely believed that the check issue had been resolved and was not aware of the fact that it was still being dishonored. Additionally, the amounts claimed by the Plaintiff are in excess of what we agreed to and are not based on an accurate or actual accounting of patient revenue attributed to services provided by the Plaintiff to the Defendant, Island County Dermatology, PLLC." In support of his reply, Johnson declared that in his opinion, his financial records showed Fowler had been paid in full or even overpaid due to errors made by the previous bookkeeper.

[3] RCW 49.52.050 states:

¶9 The trial court denied Johnson's motion to vacate, entering written findings of fact and conclusions of law. The trial court concluded, in pertinent part:

5. The four part test enumerated in the case of *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968)[4] is the proper test to apply to determine if defendants' motion should be granted or denied.

6. There is substantial evidence to support a defense to all or part of the sums claimed by the plaintiff and awarded in the default judgment.

7. An issue before the court was whether the defendants' failure to timely appear and answer was the result of "mistake, inadvertence, surprise or excusable neglect."

8. None of the explanations/circumstances presented by the defendants rise to the accepted level of mistake, inadvertence, surprise or excusable neglect.

---

Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who

(1) Shall collect or receive from any employee a rebate of any part of wages theretofore paid by such employer to such employee; or

(2) Wilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract; . . .

. . . .

Shall be guilty of a misdemeanor.

[4] Under *White*, a trial court deciding whether to exercise its discretion to set aside a default judgment under CR 60(b) must consider four factors:

(1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.

*White*, 73 Wn.2d at 352. If the defaulting party "demonstrate[s] a strong or virtually conclusive defense to the opponent's claim, scant time will be spent inquiring into the reasons which occasioned entry of the default," so long as the motion is timely and the failure to appear was not willful. *Id.* Furthermore, if only a prima facie defense is shown, the remaining factors will be more heavily scrutinized. *Id.* at 352-53. When analyzing the existence of a prima facie defense, a court must "view the facts proffered in the light most favorable to the defendant, assuming the truth of that evidence favorable to the defendant and disregarding inconsistent or unfavorable evidence." *TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc.*, 140 Wn. App. 191, 203, 165 P.3d 1271 (2007).

9. There are no special circumstances in the present case warranting a finding that substantial hardship would be imposed upon the plaintiff if the judgment were to be vacated.

10. There is no evidence that plaintiff did something that would render enforcing the judgment inequitable, i.e. that the plaintiff was purposely deceptive or manipulative rising to the level preventing the defendants' full participation. No such deceptive or manipulative conduct occurred in this case.

11. Defendants' Motion to Vacate the Order of Default and Judgment should be denied because of the Defendants' failure to demonstrate a basis to vacate the default judgment under CR 60(b)(1).

¶10 Johnson moved for reconsideration, arguing that "since the Defendants demonstrated facts supporting a strong or virtually conclusive defense to the Plaintiff's claim for unpaid wages, the court incorrectly emphasized, as its first line of inquiry, the circumstances and reasons given by the Defendants for failing to answer the complaint in a timely manner." Johnson pointed out that the court's letter ruling indicated that he had met three out of four factors in *White*.

¶11 The trial court reconsidered its decision, explaining in a May 18, 2010 letter ruling:[5]

I have been trying to determine if the Default Order is an all or nothing entity or if the individual issues contained therein can be dealt with separately.

Five causes of action were pled in the Amended Complaint filed by Plaintiff on July 7, 2009.[6] Various degrees of defenses were set forth in the Motion to Vacate Default to these claims. This

---

[5] The trial court held a hearing for presentment of an order on the motion for reconsideration on July 7, 2010. During that hearing, the court stated:

The Court issued a letter of ruling on reconsideration overturning I suppose my earlier decision. Not so much overturning 3/4's of it but because I believe after reviewing the case law that summary judgment is either all or nothing. I therefore overturn the entire prior ruling based on one portion of the complaint in this case.

[6] The trial court mistakenly referred to the amended complaint Fowler filed on July 7, 2009, which added a claim for tortious interference with business

Court finds that Defendant(s) demonstrated a strong or virtually conclusive defense to the third cause of action. Specifically, as it relates to the willful and intentional requirements of RCW 49.52.050.

The remaining four causes of action remain subject to the four prong analysis resulting in the previous ruling denying the Motion to Vacate Default and Default Judgment.

I can find no authority allowing vacation of the default on one cause of action and maintaining it on the other four. The complaint and ensuing default must be decided on an all or nothing basis.

Therefore, since the Defendant is entitled to vacation of the default on the third cause of action, the Motion for Reconsideration is granted. The Motion to Vacate Default and Default Judgment is granted.

¶12 The court entered a written order on July 7, 2010, incorporating its May 18 letter ruling and making the specific finding that "there is no evidence in the record to establish that the defendant acted wilfully & intentionally as required by RCW 49.52.050." The court entered a separate order granting Johnson's motion to vacate the default orders. Fowler moved for reconsideration, which the court denied. Fowler appeals.[7]

### DISCUSSION

¶13 The only issue before us is whether the trial court erroneously concluded that it did not have authority to

expectancy. Because Johnson was never served with the amended complaint, the default judgment was entered on the original complaint.

[7] Fowler appeals from the order denying defendants' motion to vacate default and default judgment entered February 26, 2010; order granting defendants' motion for reconsideration re: motion for order to vacate default entered July 7, 2010; and letter ruling denying plaintiff's motion to reconsider entered August 20, 2010. She requests this court reverse the trial court's order vacating entry of default and default judgment, remand for entry of judgment on all claims except the double damages claim, and order trial on the claim for double damages. We note that Johnson did not appeal the trial court's determination that he had made an insufficient showing under *White* to warrant vacating the default orders on the remaining claims.

vacate the default orders on one of the claims in Fowler's complaint while maintaining the default orders as to the remaining claims. We hold that the trial court had such authority and, because the record indicates the court was inclined to do so, reverse and remand.

## Authority To Vacate

¶14 We review a trial court's ruling on a motion to vacate a default judgment for abuse of discretion. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). A trial court abuses its discretion only when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc.*, 140 Wn. App. 191, 199, 165 P.3d 1271 (2007). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; and it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

¶15 Fowler argues that the trial court abused its discretion because the court relied on an incorrect legal standard to conclude that it lacked authority to vacate default orders on only one claim in a multiclaim lawsuit. Fowler asserts that when a defaulting party demonstrates a strong defense on one claim but the defense is inapplicable to any remaining claims, a court may properly vacate the default orders on that one claim, while leaving the default orders on the other claim intact. In support of her argument Fowler relies on *Calhoun v. Merritt*, 46 Wn. App. 616, 731 P.2d 1094 (1987) and *Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson*, 95 Wn. App. 231, 974 P.2d 1275 (1999). Fowler also contends that because CR 55

and CR 60 allow trial courts to vacate default orders upon such terms as the court deems "just," the trial court has broad discretion to vacate its default order with respect to particular claims. Finally, Fowler argues that the trial court's broad equitable powers allow it to fashion appropriate relief, including vacating default orders on some but not all claims.

¶16 Johnson argues that regardless of the breadth of the trial court's authority, it reached the correct result because the default orders on all of Fowler's claims should have been vacated under *White*. He asserts that he had a strong defense to *all* of the claims and that his reasonable belief that his attorney was handling the suit established mistake and excusable neglect.

¶17 Although no authority expressly addressing this issue has been cited to us, nor could we find any, we hold that the trial court had the authority to vacate its default orders on only one claim. A motion to vacate default orders under CR 55 and CR 60 is addressed to the sound discretion of the court and is equitable in nature. *White*, 73 Wn.2d at 351. The court rules explicitly permit default orders to be vacated on such terms as are just. In making this determination, the most important factors are whether the defaulting party has demonstrated at least a prima facie defense to the claim asserted by the opposing party and whether the defaulting party's failure to answer was occasioned by mistake, inadvertence, surprise, or excusable neglect. *Id.* at 352. When a defaulting party meets this burden as to one claim, but not another, it is within the trial court's discretion to grant the motion to vacate on the former and deny it on the latter.[8]

¶18 Furthermore, although not directly on point, *Shepard* and *Calhoun* support the conclusion that a trial court may rule on a motion to vacate default orders by addressing the

---

[8] Johnson does not appear to dispute the trial court's authority to vacate the default orders on only one claim. He argues only that the trial court reached the correct result and that we should affirm the trial court on this ground.

circumstances of each particular claim. In *Shepard*, we held that a trial court has "discretion to vacate the damages portion of a default judgment even where no meritorious defense [to liability] is established." *Shepard*, 95 Wn. App. at 241. That case involved a legal malpractice case-within-a-case based on the defendant law firm's failure to file a timely motion to vacate a default judgment. We stated that the standard for when to vacate damages awards from default judgments is the same as the standard for setting aside awards of damages from trials. *Id.* at 241-42. "Thus, the default award here could be vacated if there were not substantial evidence to support the award of damages." *Id.* at 242. Applying that standard to Helsell's hypothetical motion, we concluded it would have led to vacating the default damages award. *Id.*

¶19 Similarly, in *Calhoun*, we upheld the trial court's denial of a motion to vacate a default as to liability but reversed denial as to the amount of damages. There, Calhoun filed a negligence action against Merritt for injuries caused in a car accident. Merritt failed to answer and the court entered an order of default. *Calhoun*, 46 Wn. App. at 617-18. The court held a hearing on damages and entered judgment. Merritt then appeared and moved to vacate the default judgment. He argued that he did not understand the importance of the documents and believed the adjuster for his insurance company was handling the matter. The adjuster stated he had not been aware of the default until after receiving a copy. He further stated that during his investigation of Calhoun's claim, he received facts indicating that the claim was worth far less than the judgment entered. Merritt asserted no defenses as to his liability for the accident. *Id.* at 619-20. The trial court denied Merritt's motion to set aside the default judgment.

¶20 On appeal, we reversed only the portion of the order relating to damages. We upheld the default judgment on liability because Merritt asserted no defenses, but applied the *White* factors and held that the trial court erred in

refusing to vacate the damage portion. We concluded the excuse, diligence, and prejudice factors were met and, as for the defense factor, noted that a prima facie defense as to damages was sufficient under those facts because development of a defense would require discovery. *Id.* at 620-22.

¶21 In light of the applicability of equitable principles and the court's broad authority under CR 55 and CR 60, we conclude that a court may consider the merits of each particular claim when deciding a motion to vacate default orders. This conclusion is also consistent with the rationale underlying our decisions in *Shepard* and *Calhoun*. The trial court's decision in this case to vacate the default orders on all of Fowler's claims was an abuse of discretion because it was based on the erroneous conclusion that the trial court lacked authority to consider each claim on its own merits. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). We therefore reverse the trial court and remand for further proceedings consistent with this opinion.

## Attorney Fees on Appeal

¶22 Fowler requests attorney fees on appeal under RCW 62A.3-515(a), which provides:

[I]n the event of court action on the [dishonored] check, the court, after notice and the expiration of the fifteen days, shall award reasonable attorneys' fees, and three times the face amount of the check or three hundred dollars, whichever is less, as part of the damages payable to the person enforcing the check.

She contends that should the default judgment be reinstated on her fourth cause of action, she becomes the prevailing party and entitled to fees, citing *Northwest Motors, Ltd. v. James*, 57 Wn. App. 364, 374, 788 P.2d 584

(1990). Because we remand this matter to the trial court, the request is denied.

¶23 Reversed and remanded.

Schindler and Lau, JJ., concur.