# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHELLE BAXTER, | No. 49511-2-II |
| Appellant, | |
| v. | |
| RICHARD AH LOO, | UNPUBLISHED OPINION |
| Respondent, | |
| CATHERINE KONISETI, | |
| Defendant. | |

JOHANSON, J. — Michelle Baxter appeals the trial court's order vacating a default judgment against Richard Ah Loo[1] in a negligence action. Because the trial court did not abuse its discretion, we affirm.

## FACTS

### I. THE ACCIDENT, LAWSUIT, COMMUNICATIONS WITH INSURER, DEFAULT JUDGMENT

In the early morning hours of March 2, 2016, Baxter was attempting to enter the freeway when she struck a vehicle that was stopped at the end of the freeway on-ramp. Catherine Koniseti was the driver of the stopped vehicle; Ah Loo owned the vehicle. Baxter suffered serious injuries, including a shattered pelvis.

---

[1] Ah Loo was one of two defendants in this negligence action. The second defendant, Catherine Koniseti, is not involved in this appeal.

On March 7, five days after the accident, Baxter's counsel sent an e-mail with an attached letter to Ah Loo's insurer, Kemper Insurance, advising Kemper that he was now representing Baxter and inquiring about Ah Loo's policy limits. Baxter's counsel also advised Kemper that Baxter was possibly going to file a lawsuit within the next two weeks. The e-mail and the letter were addressed to adjuster Maria Danek. Between March 9 and March 17, Baxter's counsel and Danek corresponded about the insurance claims and Baxter's "theory of liability." Clerk's Papers (CP) at 163, 166.

On April 14, Baxter filed a negligence action against Ah Loo and Koniseti. The complaint alleged Ah Loo was liable for the accident because he owned the vehicle that Baxter rear-ended and that Koniseti drove. The complaint was served on Ah Loo on April 16.

On May 12, Baxter's counsel sent two e-mails to Danek. In the first e-mail, Baxter's counsel stated, "Are you guys covering this, Maria?" CP at 75. In the second e-mail, sent a half hour later, Baxter's counsel stated, "If no one appears within a week, we will move for default judgment." CP at 75. Baxter's counsel apparently attached the complaint, summons, and declaration of service to the second e-mail.

The next day, Baxter's counsel notified the trial court that Baxter "wanted to present an ex parte order of default and default judgment." CP at 106. The trial court told Baxter's counsel "that the matter needed to be cited on the court's docket for a prima facie case presentation." CP at 106. It appears Baxter's counsel noted the motion to vacate that day.

On May 16, Karen Pearson of Kemper left the following voicemail for Baxter's counsel:

Hi, this is Karen Pearson with Kemper Insurance. I am calling regarding a claim that I just inherited. Your client is Michelle Baxter and I just needed to touch bases with you regarding the claim. If you could return my call, I'd appreciate it.

2

CP at 77. Two days later, on May 18, Pearson called again and left another similar message for Baxter's counsel.

On the morning of May 20,[2] Baxter's counsel obtained an order granting motion for default against Ah Loo with a judgment of more than $1,300,000.

Pearson called Baxter's counsel's office at 3:22 PM on May 20 and left this message:

> This is Karen Pearson with Kemper. I am calling again regarding your client, Michelle Baxter. I have been trying to reach you regarding the suit that was filed on this case. I just needed to touch bases and see if there's any possibility of getting this claim resolved or if I need to get it to counsel to get an answer filed.
> If you could return my call, I'd appreciate it.

CP at 77.

Pearson called a second time that day and spoke to Baxter's counsel's receptionist. Pearson asserted that she "pressed . . . [the] receptionist to let [her] know if there was anyone there who could respond to [her] question." CP at 37. After checking with someone, the receptionist told Pearson that Baxter's counsel was in a conference and that he had sent her (Pearson) an e-mail. Pearson had not received an e-mail, so she asked who the e-mail had been sent to and the receptionist said it might have been sent "to a prior adjuster." CP at 37. Pearson asked the receptionist to forward any e-mails to her, but Pearson later stated that she did not receive any e-mails from Baxter's counsel.

Feeling that Baxter's counsel was avoiding her, Pearson then e-mailed the summons and complaint to defense counsel Gary Western and asked him to appear and answer the complaint. At approximately 3:45 PM on May 20, Western called Baxter's counsel and left a voicemail

---

[2] Baxter asserts that her counsel obtained the default judgment at approximately 9:45 AM, but there is a notation on the order that suggests that the order was entered at 10:59 AM.

informing Baxter's counsel that he (Western) was appearing for the defendants. At 3:59 PM, Western e-mailed a notice of appearance to Baxter's counsel. Baxter's counsel called Western a minute later and told Western that he "was 'too late' and that earlier that day [Baxter's counsel] had taken a default and default judgment for $1,350,000." CP at 41. Baxter's counsel refused Western's request to vacate the judgment. Three days later, Western entered a formal notice of appearance.

## II. MOTION TO VACATE DEFAULT JUDGMENT

On May 26, Ah Loo moved to vacate the default judgment. He asked the trial court to vacate the default judgment because the insurance adjuster had called Baxter's counsel four times during the week of May 16 and was never informed that the motion for default had been filed. Pearson provided a declaration in support of the motion to vacate the default judgment describing her attempts to contact Baxter's counsel. Western also filed a declaration in support of the motion to vacate asserting the facts described above.

Baxter opposed the motion to vacate the default judgment "on equitable grounds," arguing that Ah Loo had failed to establish a prima facie defense or excusable neglect. CP at 81. Baxter also asserted that her counsel had "warned" Kemper in his May 12 e-mail that Baxter's counsel intended to move for a default judgment and no one responded.

The trial court granted Ah Loo's motion to vacate.[3] In a written decision, the trial court provided the following analysis:

---

[3] The trial court also imposed CR 11 sanctions against Ah Loo for misrepresentations Pearson made in her declaration describing her May 16, 2016 phone message. These sanctions are not at issue on appeal. We note that our decision is based on the transcribed version of the May 16, 2016 phone message, not the representations Pearson made in her declaration.

1.  Washington Courts disfavor Default Judgments and prefer that the parties have their day in court.  As such, courts may utilize its *equitable powers* in setting aside default judgment.

2.   Defendant presented evidence that a phone call was made to the plaintiff's attorney's office on May 16, 2016.  At the very least the adjuster requested a call back to, as she stated,—"touch bases with you regarding the claim." *The reasons for not responding to said voicemail by the plaintiff's attorney fell well short of providing a logical reason.*  To opine that -- "she simply called to resolve the 'claim'" – misstated the intent of the telephone call itself.  The transcribed version, as provided by plaintiff's attorney, showed rather clearly that the adjuster wanted to speak with the plaintiff's attorney.  Moreover, in plaintiff's email of May 12, 2016 at 8:31 am, to the prior adjuster, the attorney asked – "Are you guys covering this, Maria?"  Logic would hold that the voicemail from the adjuster on May 16, 2016 would be a response to said earlier email inquiry.

Similarly, as the court outlined in Gutz,[4] *plaintiffs failure to respond to the May 16th voicemail from the adjuster –*

> 1.      *knowing that a default hearing was scheduled for May 20, 2016,*
> 2.      *knowing that the adjuster was calling to "touch bases" with him regarding his client's claim, and*
> 3.      *knowing the call was made "at a time when the time for filing an appearance was running,"*

*-appeared, in this court's opinion, to be an "inequitable" attempt to conceal the existence of the litigation*.  Instead plaintiff argued:  "She never even mentions the lawsuit.  The topic of hiring an attorney never comes up.  Instead, she states that she ["]'inherited' a claim."  The court will agree with plaintiff that the adjuster, in her declaration, completely misstated and mischaracterized the voicemail that she had left for plaintiff's counsel.  As noted by plaintiff's counsel, the adjuster added language to the voicemail by stating she inquired of plaintiff's counsel whether she could settle the claim without the need to hire an attorney, and if not, whether she needed the attorney to file a notice of appearance.  The adjuster, as argued by plaintiff's attorney, "added facts . . . to strengthen the Defendant's argument that this was an 'appearance.'"  As shown by the transcription, the declaration contained false statements.

Regardless of the reasoning for not returning the call to the adjuster, *plaintiff had, at the very least, the duty not to conceal from the adjuster the default prima facie presentation scheduled for May 20, 2016.*  Plaintiff knew if the adjuster failed to retain counsel in order to file the appropriate notice of appearance, the order of default would be signed by the Court and filed with the Court.  Rather than returning the adjuster's phone call, or as he had done previously, sending another email to this new adjuster, *it appeared plaintiff's attorney chose to ignore the adjuster's inquiry altogether*.

---

[4] This appears to be a reference to *Morin v. Burris*, 160 Wn.2d 745, 754, 161 P.3d 956 (2007). *Morin* was a consolidated case, and Gutz was one of the parties.  *Morin*, 160 Wn.2d at 748, 751.

> Thus, under these specific facts, defendant's failure to appear was excusable *under equity and Civil Rule 60*.

CP at 111-12 (emphasis added; alteration in original). The trial court subsequently entered an order vacating the judgment.

Baxter appeals.

## ANALYSIS

### I. LEGAL PRINCIPLES

We review a trial court's decision vacating a default judgment for an abuse of discretion. *Little v. King*, 160 Wn.2d 696, 702, 161 P.3d 345 (2007). "A trial court abuses its discretion only when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons." *Fowler v. Johnson*, 167 Wn. App. 596, 604, 273 P.3d 1042 (2012). "An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court." *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). Because default judgments are disfavored in Washington, we are less likely to find an abuse of discretion when the trial court sets aside a default judgment. *Hwang v. McMahill*, 103 Wn. App. 945, 950, 15 P.3d 172 (2000) (citing *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979)).

"'A proceeding to vacate a default judgment is equitable in character and relief is to be afforded in accordance with equitable principles.'" *Friebe v. Supancheck*, 98 Wn. App. 260, 265, 992 P.2d 1014 (1999) (quoting *Griggs*, 92 Wn.2d at 581). "This is not a mechanical test; whether or not a default judgment should be set aside is a matter of equity." *Little*, 160 Wn.2d at 704. The trial court may exercise its discretion "'liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done.'" *Griggs*, 92 Wn.2d at 582 (quoting *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968)).

6

Motions to vacate a default judgment are governed by CR 55 and CR 60. *Morin v. Burris*, 160 Wn.2d 745, 754, 161 P.3d 956 (2007). CR 55(c)(1) provides that a court may set aside an order of default for good cause and upon terms the court deems just. If a default judgment has been entered, the court may set it aside under CR 60(b). CR 60(b) sets out several grounds that can justify relief from judgment. The moving party bears the burden of proof. *See Little*, 160 Wn.2d at 704-05.

## II. TRIAL COURT DID NOT ABUSE ITS DISCRETION

Baxter argues that the trial court's decision was based "on a single factor," Baxter's counsel's "'inequitable attempt to conceal the existence of the litigation'" from Kemper, and that there is no evidence to support this finding. Br. of Appellant at 19. We disagree.

A review of the trial court's CR 60(b) ruling shows that the trial court did not rely on a "single factor" when setting aside the default judgment. The trial court relied on the totality of the specific facts presented, its equitable powers, and CR 60(b). Further, there is substantial evidence to support the trial court's finding. Thus, Baxter's argument fails.

Baxter further argues that the trial court should not have concluded that his failure to return Pearson's calls required the trial court to vacate the default judgment on an equitable basis under *Morin*. Again, this argument fails.

Baxter argues that, unlike in *Morin*, Kemper knew about the lawsuit and knew "that a default judgment was pending." Br. of Appellant at 20. Baxter is correct that this case is not identical to *Morin*. But *Morin* still supports the general premise that a trial court can consider plaintiff's counsel's failure to communicate with the defense as an equitable ground upon which

7

to vacate a default judgment. The facts here provided reasonable grounds upon which the trial court could have concluded that Ah Loo was entitled to relief under CR 60.

Baxter suggests that Ah Loo's failure to file a notice of appearance was the result of a "'break-down of internal office procedure'" and that this does not justify vacating the default judgment. Br. of Appellant at 23 (quoting *Rosander v. Nightrunners Transp. Ltd.*, 147 Wn. App. 392, 407, 196 P.3d 711 (2008)). But the trial court's ruling did not rely on a breakdown of internal office procedure on Kemper's part.

Baxter further argues that the trial court failed to find "a causal link between the plaintiff's inequitable conduct, on the one hand, and the defendant's failure to appear, on the other." Br. of Appellant at 24 (citing *Morin*, 160 Wn.2d at 759). Although the trial court did not expressly find a causal link between Baxter's counsel's behavior and the failure to appear, it is certainly implied. And such a link is supported by the facts.

Baxter also argues that the trial court never found that Kemper had acted with diligence, given that it knew about the litigation before Baxter's counsel failed to stay in contact with the insurer. But Pearson made several attempts to contact Baxter's counsel about the litigation before the trial court entered the default judgment. Although Pearson could have arranged for Ah Loo's counsel to file a notice of appearance before Pearson did, the facts demonstrate that Kemper was still trying to engage in negotiations and that it was unaware it had to immediately file the notice of appearance or risk the default judgment. This supports the conclusion that Kemper acted with diligence.

Baxter also contends that the trial court did not consider and the facts do not support vacating the default judgment under the *White* factors. Baxter is correct that the trial court's ruling

did not address the *White* factors. But even if we assume the *White* factors apply, Baxter does not show that the facts do not support vacating the default judgment.

The *White* factors require the trial court to consider whether (1) there is substantial evidence supporting a prima facie defense to the claim upon which the court entered the default judgment; (2) the moving party's failure to timely appear and answer the claim was due to mistake, inadvertence, surprise, or excusable neglect; (3) the moving party acted with due diligence upon notice of entry of the default judgment; and (4) a substantial hardship will result to the opposing party. *Fowler*, 167 Wn. App. at 601 n.4 (citing *White*, 73 Wn.2d at 352). The express reference to claims due to "mistake, inadvertence, surprise, or excusable neglect" within these factors demonstrates that *White* is intended to apply to claims brought under CR 60(b)(1), which allows for relief from judgment based on those identical grounds. *Fowler*, 167 Wn. App. at 601 n.4.

Here, the record suggests that there is a clear prima facie defense in that Ah Loo's ownership of the vehicle is an insufficient basis for liability, it appears that Baxter's counsel's failure to return the insurance company's phone calls caused Ah Loo's counsel's failure to file the notice of appearance sooner, Ah Loo's counsel's prompt filing of the motion to vacate the default judgment, and the fact of a lack of hardship because no discovery has been made yet. Thus, assuming the *White* factors apply, the record supports vacating the default judgment.

## III. CONCLUSION

Given that default judgments are generally disfavored, we hold that the trial court did not abuse its discretion when it concluded that there were equitable grounds for vacating the default judgment.

## IV. ATTORNEY FEES AND COSTS ON APPEAL

Ah Loo asks for attorney fees and costs under RAP 18.9 for responding to a frivolous appeal.

RAP 18.9 allows for the award of sanctions, such as attorney fees and costs, when a party brings a frivolous appeal. "[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal." *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980).

Here, although we hold that Baxter's arguments are not successful, we do not find them totally devoid of merit. Accordingly, we deny Ah Loo's request for sanctions under RAP 18.9.

We affirm the trial court's orders granting Ah Loo's motion to vacate the default judgment and vacating the default judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

LEE, J.