IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RACHAEL LAUREEN GOLDBERG, and COLE GOLDBERG, | No. 85669-3-I |
| Respondents, | DIVISION ONE |
| v. | |
| JENNIFER DAVISON, in her capacity as Personal Representative of the Estate of Lawrence D. Goldberg, | UNPUBLISHED OPINION |
| Defendant, | |
| JENNIFER ALLEN, | |
| Appellant, | |
| GRANT GOLDBERG, | |
| Defendant. | |

BOWMAN, J. — Jennifer Allen appeals the trial court's denial of her motion to vacate an order invalidating the will of Dr. Lawrence Goldberg under CR 60(b)(4) and (11) and the resulting attorney fee awards to his daughter and son. Because the trial court did not abuse its discretion, we affirm.

FACTS[1]

In September 2018, Lawrence[2] died intestate in Clark County. His children Rachael Goldberg, Cole Goldberg, and Grant Goldberg survived him.

---

[1] This is the second appeal in this matter. *See In Re Est. of Goldberg*, No. 37986-8-III (Wash. Ct. Appt. Nov. 4, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/379868_unp.pdf. We recite the facts pertinent to only this appeal.

[2] We refer to the members of the Goldberg family by their first names for clarity. We mean no disrespect by doing so.

Rachael petitioned for letters of administration and for an order granting her nonintervention powers. On October 12, 2018, the court granted Rachael nonintervention powers and appointed her as personal representative (PR) of Lawrence's estate.[3]

A few weeks later, Allen moved to revoke Rachael's letters of administration and to instead appoint her as PR of the estate. Allen produced a will she claimed Lawrence executed on December 18, 2014. The purported will named Allen as executor of Lawrence's estate and bequeathed Allen his entire estate. It listed only Cole and Grant as Lawrence's children. And it disinherited Cole and Grant but did not mention Rachael. Allen filed a declaration stating she knew Lawrence for nine years, including three and a half years as his roommate, and he never mentioned having a daughter. Betty Jo Potter and her son, Tracy Potter, witnessed the will. Betty Jo[4] and Tracy lived near Allen, who boarded her horses on their property. In an October 22, 2018 declaration, Betty Jo and Tracy each claimed that on December 18, 2014, Lawrence brought them the will to witness.

Rachael and Cole objected to Allen's motion to revoke. On November 16, 2018, the trial court admitted the will to probate as Lawrence's "presumptive" last will and testament and appointed professional fiduciary Jennifer Davison to serve as PR of the estate. Rachael and Cole then challenged the will under the Trust

---

[3] After the court appointed Rachael as PR, Cole intervened and sought co-appointment as PR of the estate.

[4] For the sake of clarity, we refer to the Potter family members by their first names. We mean no disrespect by doing so.

and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. Their TEDRA petition alleged (1) the will did not meet the requirements of RCW 11.12.020, (2) fraud, (3) lack of testamentary capacity, (4) undue influence, and (5) Allen engaged in the unauthorized practice of law.

Rachael and Cole hired private investigator John Visser to investigate the circumstances of the will. On January 19, 2019, Visser drove to Betty Jo and Tracy's home to interview them about their role as witnesses. Betty Jo was sick but Tracy agreed to talk with Visser. Tracy also agreed that Visser could record the interview on his cell phone. The two walked to Visser's car, where Visser set his laptop computer on the hood and showed Tracy a scanned copy of the will. Visser asked Tracy who brought him the will to sign. Tracy told Visser that Allen brought him and his mother the will and that Lawrence was not present when they signed it.

Moments into the interview, Allen and her husband arrived at the property. She approached Visser and asked why he was speaking to Tracy. Visser asked Allen to move away from the interview several times but Allen kept interrupting, insisting the court had already "resolved" the matter. After Allen moved away, Visser concluded the interview. As he drove away from the home, Tracy called him, saying that he " 'fucked up' " and that Lawrence brought him and his mother the will to sign, not Allen.[5]

---

[5] Betty Jo Potter died a month later and Visser never interviewed her.

3

On April 26, 2019, the court held a TEDRA bench trial to determine whether the purported will met the formality requirements of RCW 11.12.020.[6] Specifically at issue was whether Lawrence was present at the time Betty Jo and Tracy witnessed the will. During the trial, Visser testified about his January 2019 interview of Tracy. Visser explained that Tracy told him Allen brought him the will and Lawrence was not present when he signed it.

The court admitted as evidence a recording and transcript of Visser's interview with Tracy. The relevant section of the transcript reads:

> "[MR. VISSER]: I'm out here with Tracy Potter. Tracy Potter's outside with me looking at some signature that's a testation clause that indicates something about a last will and testament. And it's a signature that has Tracy's signature and Betty [Jo]'s signature.
>
> "MR. POTTER: Yeah.
>
> ". . . .
>
> "MR. VISSER: Did you sign that?
>
> "MR. POTTER: Yes.
>
> "MR. VISSER: Who brought you this form to sign?
>
> "MR. POTTER: Jennifer [Allen]."[7]

---

[6] RCW 11.12.020(1) requires that all wills

shall be in writing signed by the testator or by some other person under the testator's direction in the testator's presence or electronic presence, and shall be attested by two or more competent witnesses, by subscribing their names to the will, or by signing an affidavit that complies with RCW 11.20.020(2), while in the presence or electronic presence of the testator and at the testator's direction or request.

[7] *Goldberg*, No. 37986-8-III, slip op. at 5 (some alterations in original). The parties did not designate the exhibit of the transcript of Visser's January 2019 interview with Tracy or the relevant portion of the April 2019 TEDRA trial transcript.

4

Tracy also testified at the trial. Consistent with the recording, he acknowledged he told Visser that Allen brought him the will but said he later realized he was mistaken and recanted. He testified that Lawrence brought him the will and was present when he and his mother signed it as witnesses. Tracy admitted that on January 19, 2019, after Visser left his home, Allen told him that "it might be good" to call Visser and change his statement, so he did. Allen also testified at trial and called several witnesses on her behalf.

On May 2, 2019, the court held a hearing to announce its decision that Racheal and Cole presented clear, cogent, and convincing evidence that Lawrence was not present when Tracy signed the will, so it was invalid. It asked the parties to prepare proposed findings of facts and conclusions of law. Allen moved for reconsideration, and Racheal and Cole moved for attorney fees and costs. On June 5, 2019, the court denied Allen's motion for reconsideration of its May 2 ruling.[8]

The trial court entered findings and conclusions in August 2019. It found Visser's testimony credible. And it determined the only credible testimony from Tracy was that he told Visser during their January 2019 interview that Allen brought him the will and he signed it outside the presence of Lawrence. The court did not find Allen's testimony credible.[9] And it found that Allen tried to "influence and coach" Tracy's testimony. The trial court concluded by clear, cogent, and convincing evidence that it was Allen, not Lawrence, who brought

---

[8] The court also ordered PR Davison to be paid from the estate.

[9] The court also did not find Allen's witnesses credible.

Betty Jo and Tracy the will to sign, that Lawrence was not present for the witnessing of the will, and that the will was not valid because it did not follow the formal requirements of RCW 11.12.020(1).

The court entered an order invalidating the will and reappointing Rachael as PR of Lawrence's estate. And it entered judgment against Allen for Cole's attorney fees and costs. Then, on September 6, 2019, the court entered a judgment against Allen for Rachael's attorney fees and costs. Two weeks later on September 17, it ordered Allen to reimburse the estate for former PR Davison's fiduciary fees and attorney fees.

Allen appealed.[10] While Allen's appeal was pending, she sued Visser, alleging that he altered the recording of his January 2019 interview with Tracy before providing it as evidence during the TEDRA trial. Allen hired forensics expert Michael Yasumoto to examine Visser's cell phone. Yasumoto determined that Visser recorded the conversation using the phone's "native audio recording application," which cannot edit a conversation. He then extracted several files from the phone, which he described as copies of the January 19, 2019 recorded interview.

Allen also hired certified forensic audio examiner Arlo West to assess the authenticity of the recorded interview. At first, West listened to Visser's TEDRA trial testimony that captured the recorded interview played in court. West issued a March 2, 2020 report in which he concluded that the interview recording played

---

[10] *Goldberg*, No. 37986-8-III, slip op. at 1.

during Visser's testimony "could not be verified as authentic" because it was (1) a re-recorded copy and (2) not the original recording of the conversation.

West then examined the recordings Yasumoto extracted from Visser's phone. West compared the recordings from Visser's phone with the recording played during the TEDRA trial. In a second report dated March 29, 2021, West determined that certain statements made in the phone recordings did not align with statements made in the trial recordings. He also found that the recordings pulled from Visser's phone did not have "the correct timestamped date" and that the "hash values" within the files' metadata were inconsistent, making it impossible to identify which recording was the original. West concluded that the files "cannot be an accurate, original, true, correct and most importantly authentic version" of the interview.

On November 4, 2021, Division Three of our court affirmed the trial court's August 2019 findings and conclusions and order invalidating the will.[11] Three weeks later on November 23, Allen moved the trial court to vacate its order invalidating the will. She attached the reports from Yasumoto and West, arguing that Rachael and Cole presented the court with an inaccurate recording of Tracy's interview. According to Allen, their conduct amounted to fraud, misrepresentation, or other misconduct warranting relief under CR 60(b)(4) and an extraordinary circumstance warranting relief under CR 60(b)(11).

The trial court heard argument on the CR 60(b) motion on February 16, 2022. On March 29, the court issued a memorandum of decision denying the

_____

[11] *Goldberg*, No. 37986-8-III, slip op. at 1-2.

motion to vacate. It found no evidence that Rachael and Cole knew Visser may have altered the recording, and any alterations that may have occurred did not affect the key portion of the recording where Tracy admitted Lawrence was not present for the signing of the will. Further, Tracy's trial testimony corroborated the "material portion of the recording." The trial court also denied relief under CR 60(b)(11) and found the entirety of Allen's motion to be untimely because she "had a notion of this possible allegation of fraud in March of 2020[,] . . . then wait[ed] about 17 months prior to taking any action and about 3 years after the trial."

Allen moved for reconsideration. On June 29, 2022, the trial court denied reconsideration and entered judgments awarding attorney fees to Rachael as PR of the estate and Cole under RCW 11.96A.150(1).

Allen appeals.

## ANALYSIS

Allen argues that the trial court erred in denying her motion to vacate the order invalidating the will under CR 60(b)(4) and (11). She also argues the court abused its discretion in awarding attorney fees to Rachael and Cole.

1. CR 60(b)

Under CR 60(b), "the court may relieve a party . . . from a final judgment, order, or proceeding." The party seeking relief bears the burden of showing it is warranted for one of the enumerated reasons in CR 60(b)(1) to (11). *See Fowler v. Johnson*, 167 Wn. App. 596, 605, 273 P.3d 1042 (2012).

We generally review a trial court's decision to vacate a judgment under CR 60(b) for abuse of discretion. *Haley v. Highland*, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P. 2d 526 (1990).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

We review the trial court's factual findings for substantial evidence. *In re Marriage of Bresnahan*, 21 Wn. App. 2d 385, 406, 505 P.3d 1218 (2022). Substantial evidence is evidence sufficient to persuade a rational fair-minded person the premise is true. *Id.* Unchallenged findings are verities on appeal. *Id.* at 407.[12]

A. CR 60(b)(4)

Allen argues the trial court erred by denying her motion to vacate under CR 60(b)(4). We disagree.

Under CR 60(b)(4), a trial court can vacate a judgment for fraud, misrepresentation, "or other misconduct of an adverse party." The focus of CR 60(b)(4) is on judgments that a party unfairly obtained, not on those that may be based on incorrect facts. *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 371-72, 777 P. 2d 1056 (1989). And the fraudulent conduct or misrepresentation

---

[12] Allen does not challenge any of the trial court's factual findings on appeal.

must cause the entry of the judgment such that the conduct prevented the losing party from fully and fairly presenting their case. *Id.* at 372.

The moving party must establish fraud, misrepresentation, or other misconduct by clear and convincing evidence. *Lindgren*, 58 Wn. App. at 596. Fraud allegations under CR 60(b)(4) are distinct from other forms of misconduct and misrepresentation, and the trial court must find that a party established the nine common law elements of fraud.[13] *See In re Marriage of Maddix*, 41 Wn. App. 248, 252, 703 P.2d 1062 (1985). A party alleging only misrepresentation or misconduct need not show the fraud elements.[14] *See Id.*

Here, Allen argued the court should vacate the order invalidating Lawrence's will because Rachael and Cole knowingly presented to the court an altered recording of Tracy's interview. But the trial court found that Allen presented no evidence that Rachael and Cole "were complicit in the possible alleged fraud or even had any knowledge" of it. The record supports that finding. While Allen's experts concluded that Visser had altered the recording in some way, they did not ascribe knowledge of the alleged alterations to Rachael or

---

[13] To establish fraud, a moving party must show (1) a representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) their intent that it should be acted on by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth of the representation, (8) his or her right to rely on it, and (9) the consequent damage. *N. Pac. Plywood, Inc. v. Access Road Builders, Inc.*, 29 Wn. App. 228, 232, 628 P.2d 482 (1981).

[14] Allen argues that the trial court abused its discretion by analyzing Rachael and Cole's conduct under the nine elements of fraud rather than as misrepresentation or misconduct. The record does not support her assertion. In any event, the court rejected Allen's motion because no evidence showed Rachael or Cole knew of any alterations to the recording. So, the evidence would not support a finding of fraud, misrepresentation, or misconduct.

Cole. And Allen provides no evidence that Rachael or Cole were aware of any alterations to support her allegation that Visser made and played the recording during the TEDRA trial while "acting as [Rachael and Cole's] agent and at their behest."

The trial court also found that even if portions of the recording were altered, Allen failed to show any changes to the pertinent portion of it—Tracy's admission that Allen, not Lawrence, brought him the will. So, it determined Allen failed to show that any misrepresentation or fraud prevented her from fully and fairly presenting her case. Again, the record supports those findings. Indeed, the accuracy of Tracy's statement was corroborated at trial by Visser and Tracy.

The trial court did not abuse its discretion by denying Allen's motion to vacate under CR 60(b)(4).

B. CR 60(b)(11)

Allen also argues that she is entitled to relief under CR 60(b)(11) because she "provided substantial evidence that Mr. Visser's recording of the interview was altered." We disagree.

CR 60(b)(11) is a catchall provision under which a trial court may vacate a judgment for "[a]ny other reason justifying relief from the operation of the judgment." *Tatham v. Rogers*, 170 Wn. App. 76, 100, 283 P.3d 583 (2012). But relief under CR 60(b)(11) is " 'confined to situations involving extraordinary circumstances not covered by any other section of the rule.' " *Barr v. MacGugan*, 119 Wn. App. 43, 46, 78 P.3d 660 (2003)[15] (quoting *In re Marriage of Flannagan*,

---

[15] Internal quotation marks omitted.

42 Wn. App. 214, 221, 709 P.2d 1247 (1985)).  And the extraordinary circumstances must relate to " 'irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings.' "  *Flannagan*, 42 Wn. App. at 221[16] (quoting *State v. Keller*, 32 Wn. App. 135, 141, 647 P.2d 35 (1982)).

Allen's allegations of misrepresentation and misconduct fall squarely under CR 60(b)(4).  She shows no extraordinary circumstances warranting relief from the order invalidating Lawrence's will.  Because CR 60(b)(11) does not apply, the trial court did not abuse its discretion by denying her motion to vacate.[17]

2.  Attorney Fees on Appeal

Rachael and Cole request attorney fees on appeal under RAP 18.1 and RCW 11.96A.150.  RCW 11.96A.150 allows us to award equitable attorney fees to any party in a TEDRA action on appeal.  We may consider "any and all factors" that we deem "relevant and appropriate."  RCW 11.96A.150(1).  Rachael and Cole prevailed on appeal, and we conclude it is equitable to award them fees

---

[16] Internal quotation marks omitted.

[17] Allen also assigns error to the trial court's determination that her motion to vacate was untimely.  Because we affirm on other grounds, we need not reach the timeliness issue.  And because the trial court did not abuse its discretion by denying Allen's motion to vacate, we do not reach her argument that the trial court abused its discretion by awarding attorney fees to Rachael and Cole.

subject to compliance with RAP 18.1.[18]

The trial court did not abuse its discretion in denying Allen's motion to vacate under CR 60(b)(4) and (11). We affirm and award Rachael and Cole attorney fees on appeal subject to compliance with RAP 18.1.

_Bruman, J._

WE CONCUR:

_Feldman, J._          _Smith, C.J._

---

[18] Rachael and Cole also request sanctions against Allen under RAP 18.9(a), arguing her appeal is frivolous. An appeal is frivolous if it " 'raised no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists.' " *Hanna v. Margitan*, 193 Wn. App. 596, 615, 373 P. 3d 300 (2016) (quoting *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 220, 304 P.3d 914 (2013)). Because Allen's appeal raised debatable issues, we decline to impose sanctions.